848 P.2d 273

**STATE COMPENSATION FUND; Algie Price; Arizona State AFL–CIO; and American Subcontractors' Association of Arizona, Petitioners,**

v.

**Fife SYMINGTON, Governor of the State of Arizona; Tony West, Treasurer of the State of Arizona; and John Elliott Hibbs, Director of the Arizona Department of Administration, Respondents.**

No. CV–92–0243–SA.

Supreme Court of Arizona,
En Banc.

Feb. 23, 1993.

Meyer, Hendricks, Victor, Osborn & Mal-
edon, P.A. by Andrew D. Hurwitz, John A.
LaSota, Jr. and Mark A. Fuller, Phoenix,
for petitioners.

Grant Woods, Atty. Gen. by Rebecca
White Berch, Sol. Gen., Phoenix, for re-
spondents Tony West and John Elliott
Hibbs.

Snell & Wilmer by John J. Bouma, Phoe-
nix, for respondent Governor Fife Syming-
ton.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

The State Compensation Fund (the Fund) filed this special action directly in this court seeking to have §§ 1, 2, and 8 of House Bill 2001 declared unconstitutional. It became effective June 30, 1992, *see* 1992 Ariz. Legis.Serv. 7th Spec.Sess., ch. 3. The challenged provisions: (1) amend the method of calculating the federal equivalency tax payable by the Fund; (2) impose an annual alternative minimum tax of $500,000 on the Fund; and (3) apply both of these new tax provisions retroactively to January 1, 1990. The Fund advances several bases to support its claim of unconstitutionality. The

state[1] responds that the challenged provisions are valid and urged the court to decline to exercise its special action jurisdiction. Following oral argument, we accepted special action jurisdiction to resolve the issues presented by this case. We now hold that the alternative minimum tax sought to be imposed on the Fund is unconstitutional special legislation under the Arizona Constitution. Because the federal equivalency tax cannot be severed from the invalid alternative minimum tax, all three of the tax sections of the statute are invalid.

## FACTS

When the Arizona Constitution was adopted, it directed the state legislature to enact a workers' compensation law. Ariz. Const. art. XVIII, § 8. The legislature responded by enacting the comprehensive statutory scheme, 1925 Ariz.Sess.Laws, ch. 83, which now appears at A.R.S. §§ 23–901 through 23–1091. The legislature created the State Compensation Fund for the express purpose "of insuring employers against liability for compensation under this act, and of assuring to the persons entitled thereto the compensation herein provided by this act." 1925 Ariz.Sess. Laws, ch. 83, § 30. The current statutes governing the Fund are in A.R.S. §§ 23–981 through 23–1006.

The Fund and all private workers' compensation carriers are required to deposit money with the state treasurer before conducting any business in Arizona. A.R.S. § 23–961(C). The Fund and all private carriers also must, "in lieu of all other taxes on workers' compensation insurance," pay an annual tax of three percent on all premiums collected. A.R.S. § 23–961(G). The Fund, unlike private carriers, is exempt from federal income tax because of its status as a state agency. *See O'Neil v. Valley Nat'l Bank of Phoenix*, 58 Ariz. 539, 541, 121 P.2d 646 (1942) (United States cannot tax an instrumentality of the state).

In 1983, the legislature passed A.R.S. § 23–987, which required the Fund to calculate the "amount of federal tax due on all premiums collected or contracted for during the [preceding year] as if the state compensation fund was a private insurance carrier and was required to pay such federal tax." 1983 Ariz.Sess.Laws, ch. 275, § 4, *codified at* A.R.S. § 23–987. Under this statute, the Fund was not required to pay the equivalency tax; the statute merely required calculation and reporting of the amount. In 1990, the legislature amended the 1983 statute to require payment of the amount previously required only to be calculated and reported. 1990 Ariz.Sess. Laws, ch. 249, § 7. The Fund, however, determined that it would owe no federal taxes on the premiums collected or contracted for during 1990 and 1991.

The most recent amendment to A.R.S. § 23–987 is under attack here. On March 17, 1992, Governor Symington convened a special session of the legislature to consider balancing the budget for fiscal year 1991–92.[2] House Bill 2001 was enacted in response to the governor's call and is primarily a fund-transfer bill directing the transfer of funds from various special funds to the general fund. Other provisions of House Bill 2001, as well as House Bill 2002, also enacted during the special session, have been the subject of an earlier special action in this court. *Rios v. Symington*, 172 Ariz. 3, 833 P.2d 20 (1992).

At issue in this case are §§ 1, 2, and 8 of House Bill 2001.[3] These sections amended

---

1. The named respondents, Fife Symington, Governor of Arizona, Tony West, State Treasurer, and John Elliott Hibbs, Director of the Arizona Department of the Administration, hereinafter will be referred to as "the state."

2. The subjects to be considered at the special session shall be the following:
 The adjustments necessary to produce a balanced state budget for fiscal year 1991–1992

through, but not limited to, adjustments to appropriations, transfer of funds and amendment of related statutes; and [t]o make appropriations and necessary statutory changes to address the overcrowding situation in the state's prison system.
Proclamation of March 10, 1992. 1992 Ariz. Legis.Serv. v. 2, A–26.

3. The relevant provisions of House Bill 2001 follow:

the method of calculating the federal equivalency tax under A.R.S. § 23–987 so that the calculation is based on "all income" of the Fund rather than on "all premiums." In addition, House Bill 2001 imposes an annual alternative minimum tax of $500,000 payable if the amended federal equivalency tax would not give rise to a greater payment.[4] Both provisions were made retroactive to January 1, 1990, in order to recoup a minimum of $1.5 million to balance the 1991–1992 budget. Both parties acknowledge that the legislative intent of these sections was to help balance the budget and to level the playing field between the federally tax-exempt Fund and private carriers.

The Fund concedes that the federal equivalency tax standing alone (at least absent any retroactivity issue) is not discriminatory. However, the Fund asserts that the alternative minimum tax violates Arizona's constitutional prohibition against special legislation, Ariz. Const. art. IV, pt. 2, § 19. Accordingly, this opinion focuses on the alternative minimum tax. Because we find the special legislation issues dispositive, we do not address alternative challenges based on the federal equal protection clause, the "single subject rule" (Ariz. Const. art. IV, pt. 2, § 13), the statute's retroactivity, or the claim that the statute

constitutes a taking of private property for a public use.

## ISSUES

1. Whether this court should accept and exercise special action jurisdiction.

2. Whether the alternative minimum tax constitutes special legislation under the Arizona Constitution.

3. Whether the alternative minimum tax, if invalid, is severable from the federal equivalency tax. Whether the two tax provisions, if not severable from each other, are nevertheless severable from the remaining provisions of House Bill 2001.

## DISCUSSION

### A. *Special Action Jurisdiction*

 "This court has original jurisdiction over the issuance of extraordinary writs against state officers." *Rios*, 172 Ariz. at 5, 833 P.2d at 22.[5] It is within the sound discretion of this court to accept jurisdiction over special action petitions. *Nataros v. Superior Court*, 113 Ariz. 498, 499, 557 P.2d 1055, 1056 (1976). The issue presented by this case affects the budget for fiscal year 1992, as well as future budgets. "We generally accept jurisdiction

---

Section 1. Section 23–987, Arizona Revised Statutes, is amended to read:

. . . . .

The state compensation fund shall determine the amount of federal tax due on all ... *sources of income* during the year ending December 31 of the preceding year as if the state compensation fund was a private insurance carrier and was required to pay such federal tax. The fund shall transmit monies in this amount *or five hundred thousand dollars, whichever is more,* to the state treasurer for deposit in the state general fund before April 15.

Sec. 2. . . .

On the effective date of this act, amounts owed under section 23–987, Arizona Revised Statutes, as amended by this act, for 1990, 1991, and 1992, but in no event less than one million five hundred thousand dollars, shall be transferred from the state compensation fund to the state general fund.

Sec. 8. . . .

Section 23–987, Arizona Revised Statutes, as amended by this act, is effective retroactively to January 1, 1990.

1992 Ariz.Legis.Serv. 7th Spec.Sess., ch. 3.

4. The Fund argues that the $500,000 alternative payment is a "tax" for purposes of the special legislation claim. It argues, alternatively, that even if the $500,000 payment is considered a "fund transfer" rather than a "tax," House Bill 2001 would violate constitutional provisions other than the provision against special legislation. In its brief, the state repeatedly refers to the alternative payment as an "assessment"; but does not argue that its characterization as a "tax" is improper. We find that the $500,000 alternative payment is a "tax." *Ariz. Dpt. of Revenue v. Transamerica Title*, 124 Ariz. 417, 420, 604 P.2d 1128, 1131 (1979) ("A tax is the enforced contribution of persons and property levied by the authority of the state."); *Stewart v. Verde River Irr. & Power Dist.*, 49 Ariz. 531, 544–45, 68 P.2d 329, 334–35 (1937).

5. The traditional writs of certiorari, mandamus, and prohibition are now obtained by "special action." *See* Rule 1, Ariz.R.P.Spec.Act. [Footnote renumbered].

... only where the issues raised in the petition are such that justice cannot be satisfactorily obtained by other means." *King v. Superior Court,* 138 Ariz. 147, 149, 673 P.2d 787, 789 (1983). A prompt resolution is needed so that the legislative and executive branches will know where they stand and can take such action as they determine necessary relative to budgetary matters. *See Rios,* 172 Ariz. at 5, 833 P.2d at 22. Timely resolution of the matter before us would not be promoted by requiring the Fund to proceed through the trial and appellate courts, nor are such proceedings necessary because the issue before us turns solely on legal issues rather than on controverted factual issues.

The combination of the foregoing considerations led us to accept jurisdiction of this special action after oral argument and to retain it now to resolve these questions of statewide importance. *Cf. Summerfield v. Superior Court,* 144 Ariz. 467, 469, 698 P.2d 712, 714 (1985); *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983). *See* Ariz. Const. art. 6 § 5; Rule 4, Ariz. R.P.Sp.Act.

■ In accepting jurisdiction, we have considered but rejected the state's contention that the petition should be dismissed as untimely. The Fund filed this petition for special action one day after House Bill 2001 became effective. In *Northern Propane Gas Co. v. Kipps,* 127 Ariz. 522, 525, 622 P.2d 469, 472 (1980), we held that there was "no specific time limit as to when a petition for special action must be brought, and acceptance of a petition for special action is discretionary with the court."

■ We also have considered and rejected the state's contention that A.R.S. § 42–204(A) requires us to decline jurisdiction. That statute requires taxpayers to pay taxes under protest before challenging them in court. This requirement, however, applies only to property taxes. *See RCJ Corp. v. Dpt. of Revenue,* 168 Ariz. 328, 331, 812 P.2d 1146, 1149 (Tax 1991) (holding that "[s]ection 42–204 contemplates claims for relief from any inappropriate *property taxation* ") (emphasis added).

The alternative minimum tax challenged here is not a property tax.

## B. *Special Legislation*

■ The Arizona Constitution expressly prohibits certain types of special legislation. Article IV, pt. 2, § 19(9) provides that "No local or special laws shall be enacted in any of the following cases ... 9. Assessment and collection of taxes." The purpose of proscribing special or local legislation is to prevent the legislature from providing benefits or favors to certain groups or localities. *See Eastin v. Broomfield,* 116 Ariz. 576, 584, 570 P.2d 744, 752 (1977). Such a prohibition also "confine[s] the power of the legislature to the enactment of general statutes conducive to the welfare of the state as a whole, to prevent diversity of laws on the same subject, to secure uniformity of law throughout the state as far as possible, and to prevent the granting of special privileges." 82 C.J.S. *Statutes* § 155 (1953) (footnotes omitted). In addition, it "prevents the enlargement of the rights of persons in discrimination against others' rights...." *Id.*

■ A law is special and, therefore, unconstitutional if it "applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose." *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 557, 637 P.2d 1053, 1060 (1981) (citing *Prescott Courier, Inc. v. Moore,* 35 Ariz. 26, 274 P. 163 (1929)). "A general law, in contrast, is one that confers rights and privileges or imposes restrictions on all persons of a given class where the classification has a basis founded in reason." *State v. Loughran,* 143 Ariz. 345, 347, 693 P.2d 1000, 1002 (App.1985); *see also Arizona Downs,* 130 Ariz. at 557, 637 P.2d at 1060; *Eastin,* 116 Ariz. at 584, 570 P.2d at 752; *Schrey v. Allison Steel Mfg. Co.,* 75 Ariz. 282, 255 P.2d 604 (1953).

The prohibition against special laws does not necessarily prohibit the enactment of laws that apply only to a certain class. Legislation may distinguish between

classes or groups, but to be valid, the classification must be a rational one.

■ In *Republic Inv. Fund v. Town of Surprise*, 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990), we set forth a three-part test to determine whether a law constitutes general or special legislation. A law does not constitute special legislation if (1) there is a rational basis for the classification; (2) the classification is legitimate, encompassing all members of the relevant class; and (3) the class is flexible, allowing members to move into and out of the class. *Id.; see also Arizona Downs*, 130 Ariz. at 557–58, 637 P.2d at 1060–61. If one of these three requirements is not met, the legislation is invalid. *Republic Inv. Fund*, 166 Ariz. at 149, 800 P.2d at 1257.[6]

■ In analyzing the special legislation challenge, we have "a duty to construe a statute so as to give it, if possible, a reasonable and constitutional meaning." *Arizona Downs*, 130 Ariz. at 554, 637 P.2d at 1057; *see also Big D Constr. v. Court of Appeals*, 163 Ariz. 560, 565, 789 P.2d 1061, 1066 (1990). "A strong presumption in favor of a statute's constitutionality exists." *Republic Inv. Fund*, 166 Ariz. at 148, 800 P.2d at 1256 (citing *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977)).

■ Applying the special legislation test, we first consider whether the classification has a rational basis. The classification scheme found in the legislation must be rationally related to a legitimate legislative purpose. *See Republic Inv. Fund*, 166 Ariz. at 149, 800 P.2d at 1257; *Arizona Downs*, 130 Ariz. at 557, 637 P.2d at 1060.

Thus, we must determine if legitimate legislative interests are involved. The alternative minimum tax was enacted to help balance the state budget and to "level the playing field" by eliminating the "special privilege" that the Fund has over private workers' compensation carriers as a result of its federal tax exemption. *See* Respondents' Brief at 16–17. The parties do not dispute that these are legitimate legislative goals.[7]

We next consider whether the classification drawn by the legislature is rationally related to achieving the legitimate legislative goals. The classification distinguishes between the Fund on one hand and all other workers' compensation carriers on the other. "We will uphold the classification if there exists any set of facts under which the classification rationally furthers a legitimate legislative purpose." *Eastin*, 116 Ariz. at 583, 570 P.2d at 751.

It is clear that the $500,000 alternative minimum tax was imposed only on the Fund because it is a "state agency,"[8] and the legislature believed that the Fund's assets were available to help balance the budget. No private carriers are subject to this minimum tax. The state argues that because the Fund is a state agency it is reasonable to classify it differently than private carriers for the purpose of imposing the alternative minimum tax and that the classification is reasonable because it defeats the economic advantage enjoyed by the Fund as a result of its federal tax exemption.

We find, however, that the discriminatory imposition of the alternative minimum

---

6. The Fund also challenges the alternative tax on federal equal protection grounds. Indeed, the state argues that the Fund's special legislation challenge is really an equal protection challenge because the Fund receives a detriment, not a benefit, from the alternative minimum tax. We reject the state's argument. We have previously distinguished equal protection provisions from the special legislation provisions of the Arizona Constitution. *See, e.g., Republic Inv. Fund*, 166 Ariz. at 148–49, 800 P.2d at 1257–59; *Arizona Downs*, 130 Ariz. at 557, 637 P.2d at 1060. The alternative minimum tax applies only to the Fund; thus, it not only discriminates *against* the Fund, but also *in favor* of private carriers not subject to the tax. Therefore, it

"could be attacked as both violative of equal protection and as unconstitutional special legislation because it denies a benefit to one class [equal protection claim] while conferring a benefit on another [special legislation claim]." *Republic Inv. Fund*, 166 Ariz. at 148, 800 P.2d at 1256. Because we conclude that the special legislation issue is dispositive, we do not reach the equal protection challenge.

7. Petitioner's Reply Brief at 5–6, 11.

8. Both parties concede that the Fund is a state agency. *See* Respondents' Brief at 26–28; Petitioner's Reply Brief at 3.

tax does not rationally further the goal of balancing the budget or equalizing the economic disparity between the Fund and private carriers. The fact that the Fund is a state agency does not provide a legitimate basis for such disparate treatment. The case most closely on point is *State Tax Comm'n. v. Dpt. of Fin.*, 576 P.2d 1297 (Utah 1978). The Utah Fund and all private carriers were required to pay a tax equal to 3.25 percent of the total premiums collected. *State Tax Comm'n*, 576 P.2d at 1298. The Utah legislature attempted to require the Utah Fund to pay an additional one percent tax on all premiums received. *Id.* The court found that the Utah Fund was similarly situated to private carriers, and the fact that the Utah Fund was a creation of the state legislature was not a rational basis upon which to single out the Utah Fund for payment of the additional tax.[9]

We find *State Tax Commission* persuasive. Although the Utah Supreme Court based its opinion on state and federal equal protection grounds, its analysis of whether the classification had a rational basis is directly applicable here. One test for reasonableness of a classification is "whether there is a substantial difference between those within and those without the class." *Pastore v. Arizona Dpt. of Economic Sec.*, 128 Ariz. 337, 341, 625 P.2d 926, 930 (App. 1981). The Fund, like the Utah Fund, is like a private carrier in most respects. *See, e.g.*, A.R.S. § 23-986(A) ("the provisions of title 20 and the rules adopted by the director of insurance relating to the transaction of insurance apply to the state compensation fund to the same extent as any mutual casualty insurer authorized to write workers' compensation insurance in this state."); A.R.S. § 23-1006(B) ("The state compensation fund shall be authorized to make contracts of insurance ... in the same manner and to the same extent as a mutual casualty insurer governed under

title 20."); A.R.S. § 23-961(C) (requiring the Fund and private carriers to submit a deposit before engaging in business); A.R.S. § 23-961(G) (imposing on all carriers, including the Fund, an annual three percent tax on all premiums "in lieu of all other taxes on workers' compensation insurance").

Although the Fund is a statutorily created state agency, it is not subject to other statutory provisions that govern state agencies. A.R.S. §§ 23-981.01(C), 23-986(E). The principal benefit enjoyed by the Fund as a "state agency" is its federal tax exempt status. We do not find this distinction a legitimate basis upon which to impose a mandatory minimum tax solely on the Fund. In all other respects the Fund is no different than the private carriers.

We also find that the alternative minimum tax does not *rationally* further the purpose of levelling the playing field because it imposes a mandatory flat tax, payable regardless of the amount of federal tax that would have been owed if the Fund were a private carrier. It does not account for the possibility that the Fund, if it were a private carrier, might owe no federal taxes in a given year or might owe some amount less than $500,000 in a given year. Regardless, the Fund, under the Act, is required to pay a minimum of $500,000 annually.

Because we find that the classification scheme lacks a rational basis, the alternative minimum tax violates Arizona's constitutional prohibition on special legislation. The state suggests that if we declare the alternative minimum tax provision invalid as special legislation, all legislation that applies only to the Fund must be equally unconstitutional. Although no other statutory provisions applicable only to the Fund are before us, we note that the constitutional prohibition against special legislation

9. The supreme court of Oregon has held that a similar transfer of funds from the state workers' compensation insurance fund did not violate Oregon's equal privileges and immunities clause. *Eckles v. State*, 306 Or. 380, 760 P.2d 846, 851 (1988). We note that the analysis in *Eckles* was based on the Oregon constitution's

guarantee of equal privileges and immunities to all *citizens*. *Id.* The court held that the state fund was not a citizen and therefore it could not make a claim under that guarantee. *Id.* The Arizona constitutional prohibition against special legislation is not subject to the same analysis.

applies only to certain types of legislation. The constitutional prohibition applicable in this case prohibits special legislation relating to "assessment and collection of taxes." The statutory provisions applicable only to the Fund that are cited by the state do not fall within any of the constitutionally prohibited types of special legislation.

## C. *Severability*

Having found the alternative minimum tax provision of the act invalid, we must next determine whether the federal equivalency tax provisions of the act may nevertheless stand. This requires a determination as to whether the two provisions are severable. We must also determine whether other features of House Bill 2001 are affected by our rulings involving the tax provisions.[10] We conclude that the two tax provisions applicable to the Fund are not severable from each other but are severable from the other, unrelated provisions of House Bill 2001.

■ The law regarding severability is well-settled. "An entire statute need not be declared unconstitutional if constitutional portions can be separated." *Republic Inv. Fund*, 166 Ariz. at 151, 800 P.2d at 1259 (citing *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978)). "The test for severability requires ascertaining legislative intent." *Republic Inv. Fund*, 166 Ariz. at 151, 800 P.2d at 1259; *accord Cohen*, 121 Ariz. at 9, 588 P.2d at 302.

■ In *State v. Prentiss*, 163 Ariz. 81, 86, 786 P.2d 932, 937 (1990), quoting from *Selective Life Ins. Co. v. Equitable Life Assurance Soc'y*, 101 Ariz. 594, 599, 422 P.2d 710, 715 (1967), we noted that:

[W]here the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act.

However, "the whole statute will be declared invalid where the constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose as to ... justify the conclusion that the legislature intended them as a whole and would not have enacted a part only." *Millett v. Frohmiller*, 66 Ariz. 339, 343, 188 P.2d 457, 460 (1948) (quoting 59 C.J.S. *Statutes* § 206 (1932)). Unless we can determine that the valid portion of the statute would have been enacted absent the invalid portion, the provisions are not severable. Thus "[t]he problem is twofold: the legislature must have intended that the act be separable, and the act must be capable of separation in fact." 2 *Sutherland Statutory Construction* § 44.03 (4th ed. 1986).

1. Severability of the Alternative Minimum Tax and the Federal Equivalency Tax

■ House Bill 2001 was enacted at a special session of the legislature called by Governor Symington to balance the state budget for fiscal year 1991–92. It is clear that the overriding legislative purpose in enacting House Bill 2001 was to balance the budget.

The legislature was well aware that under the former method of calculating the federal equivalency tax, the Fund would owe nothing. *See* Appendix E to Respondents' Brief. The method of calculating the federal equivalency tax was amended retroactively, and, in an attempt to raise $1.5 million for fiscal year 1992 and additional sums for future years, the alternative minimum tax was also made retroactive. *Id.* at E–1. It is unlikely that the legislature would have amended only the federal equivalency tax had it known that it could not add the alternative minimum tax. In fact, a staff memorandum from the Joint Legislative Budget Committee stated that "a minimum in lieu tax is the only way to ensure that legislative intent is followed." *Id.* The alternative minimum tax was thought to guarantee that a minimum of $1.5 million would be transferred

---

**10.** There is no severability clause in House Bill 2001 that affects our analysis.

to the state general fund. What revenue, if any, the amended federal equivalency tax would have produced standing alone cannot be determined from the record.

On the basis of these facts, we cannot determine whether the amended federal equivalency tax would have been enacted in House Bill 2001 had the legislature known that the alternative minimum tax—which it thought would automatically raise $1.5 million—was unconstitutional. Therefore, these two tax provisions in House Bill 2001 are not severable, and both must fall because the alternative minimum tax falls. Because we find both tax provisions invalid on other grounds, we do not reach any other constitutional issues presented, including those based on the retroactivity features of the statute.

2. Severability of Sections 1, 2, and 8 From Remaining Sections in House Bill 2001

■■■ The state argues that if the sections relating to the Fund are unconstitutional, then all other transfers in House Bill 2001 are similarly unconstitutional as special legislation. We disagree. If the unconstitutional part of a statute can be eliminated and the remaining constitutional part is independent and still workable, then "only that part which is objectionable will be eliminated and the balance left intact." *State v. Coursey*, 71 Ariz. 227, 236, 225 P.2d 713, 719 (1950); *see generally* 82 C.J.S. *Statutes* §§ 92–93 (1953).

Clearly, in enacting House Bill 2001, the legislature intended to transfer funds from various state agencies to balance the state budget. We discussed some of those other transfers in *Rios*, 172 Ariz. at 6–9, 833 P.2d at 23–26. All fund transfers in House Bill 2001 need not fall because the tax sections dealing with the Fund are unconstitutional. The doctrine of severability may be appropriately applied to preserve those portions of the act that would have been enacted by the legislature notwithstanding the unconstitutional portions. We think it clear that the legislature would have enacted the unrelated fund transfers in House Bill 2001 even without the unconstitutional tax provisions applicable to the Fund. The other fund transfers were necessary to carry out the main purpose of the special session—balancing the budget.

Our finding that the legislature intended that the remaining provisions be given effect does not end our inquiry. "To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted." *Millett*, 66 Ariz. at 343, 188 P.2d at 460 (quoting 2 *Sutherland Statutory Construction* (3d ed. 1943) § 2404 [4th ed. § 44.04]). We find that the remaining fund transfers can be left intact and still constitute a workable statute. The sections relating to the Fund clearly are independent of the other sections that direct various transfers. Those transfers easily can be separately enforced to further the legislative intent of House Bill 2001.

## DISPOSITION

The alternative minimum tax on the Fund in House Bill 2001 violates the special legislation prohibition of the Arizona Constitution. Because the federal equivalency tax on the Fund is not severable from the alternative minimum tax, it, too, is invalid. The invalidity of those tax sections does not affect the validity of other sections of House Bill 2001. Respondents are enjoined from taking any action to enforce §§ 1, 2, and 8 of House Bill 2001.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.