2 P.3d 682

**STATE of Arizona, Appellee,**

v.

**Kurt BONNEWELL, Lauralu Harkins, Lee Hulsey,and Walter Randall, Appellants.**

Nos. 1 CA–CR 98–0973, 1 CA–CR 98–0977 to 1 CA–CR 98–0979.

Court of Appeals of Arizona, Division 1, Department E.

Nov. 23, 1999.

As Amended Dec. 7, 1999.

Review Denied May 23, 2000.

Janet Napolitano, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Randall M. Howe, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Thomas K. Kelly, Prescott, Attorney for Appellants.

Warren R. Darrow, Prescott, Attorney for Appellants.

Angelo Patane and Janet Evans, Phoenix, Attorneys for Amicus Curiae Help Abolish Leghold Traps (H.A.L.T.)

## OPINION

RYAN, Judge.

¶1 Kurt Bonnewell, Lauralu Harkins, Lee P. Hulsey, and Walter John Randall ("Defendants") were convicted of setting a leghold trap on public land in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 17–301(D)(1),[1] a class two misdemeanor. On appeal, they argue that the statute is a special or local law in violation of the Arizona Constitution and that it violates the equal protection clauses of the Arizona and United States Constitutions.

¶2 We hold that A.R.S. section 17–301(D) is not an unconstitutional local or special law because it rationally furthers a legitimate governmental purpose, applies to all persons in Arizona, and benefits no static class of individuals. We also hold that the statute does not violate the equal protection clauses of either the Arizona Constitution or the United States Constitution because it is rationally related to a legitimate governmental purpose. We therefore affirm.

### Background

¶3 In the November 1994 general election, voters passed Proposition 201, which was codified as A.R.S. section 17–301(D). The pertinent part of the statute made unlawful the taking of wildlife on public lands by leghold trap.[2] The statute makes exceptions

1. Section 17–301(D)(1) was amended and renumbered as section 17–301(D). *See* 1998 Ariz. Sess. Laws Ch. 67, § 4. No substantive changes were made to the text of the statute. *Id.* We will refer to the amended version of the statute in this opinion.

2. The relevant portion of the statute is as follows:

for the use of traps by government officials to protect against threats to human health or safety, or for research, falconry, relocation of wildlife, or rodent control. *See* A.R.S. § 17–301(D)(1), (3), (4), and (5) (Supp.1998). According to the pamphlet issued by the Secretary of State on the 1994 Ballot Propositions, the purposes of the initiative were, among others, to prevent cruelty to wildlife on public lands and to prevent injuries to pets, children, and adults using public lands for recreation.

¶4 Defendants were each charged with setting a leghold trap in violation of A.R.S. section 17–301(D). Each filed a motion to dismiss the charges, arguing that the statute constituted a local or special law that violated article 4, part 2, section 19 of the Arizona Constitution and violated the equal protection guarantees of the Arizona and United States Constitutions because it made criminal behavior on public land that remained legal when practiced on private land.[3] At an evidentiary hearing, each Defendant admitted setting a prohibited leghold trap on public land, but presented evidence that leghold traps were humane, that they did not indiscriminately injure people or nontarget species, and that the law provided a benefit to private landowners at the expense of those who trapped on public land. The State presented no evidence. The trial court denied the motion to dismiss, ruling that voters could have rationally determined that characteristics of leghold traps justified banning them from public lands and that the distinction between public and private lands was legitimate. The parties stipulated that the court could consider admissions made during the evidentiary hearing in determining whether Defendants had committed the offense. The trial court found Defendants guilty and fined each $150. Defendants appealed.

> It shall be unlawful to take wildlife with any leghold trap, any instant kill body gripping design trap, or by a poison or a snare on any public land, including state owned or state leased land, lands administered by the United States forest service, the federal bureau of land management, the national park service, the United States department of defense, the state parks board and any county or municipality. A.R.S. § 17–301(D).

## Discussion

¶5 We review the constitutionality of a statute *de novo*. *See City of Tucson v. Woods,* 191 Ariz. 523, 530, 959 P.2d 394, 401 (App.1997). In conducting that review, we presume that the statute is constitutional and must construe it, if possible, to give it a constitutional meaning. *See State Compensation Fund v. Symington,* 174 Ariz. 188, 193, 848 P.2d 273, 278 (1993). The presumption applies to laws enacted through initiatives as well as by legislative action. *See Ruiz v. Hull,* 191 Ariz. 441, 448, ¶25, 957 P.2d 984, 991, ¶25 (1998), *cert. denied sub nom., Arizonans for Official English v. Arizona,* 525 U.S. 1093, 119 S.Ct. 850, 142 L.Ed.2d 703 (1999). The party alleging the constitutional violation bears the burden of proving it. *See Eastin v. Broomfield,* 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977). We will declare legislation unconstitutional only if we are clearly convinced that it conflicts with the Arizona or United States Constitutions. *See State v. Arnett,* 119 Ariz. 38, 48, 579 P.2d 542, 552 (1978). And, "[i]n construing an initiative, we may consider ballot materials and publicity pamphlets circulated in support of the initiative." *Ruiz,* 191 Ariz. at 449, ¶36, 957 P.2d at 993, ¶36.

### Special or Local Law

¶6 Defendants argue that section 17–301(D) constitutes a special or local law prohibited by the Arizona Constitution. Defendants contend that the statute conveys benefits to private landowners who can still use leghold traps to control predation of their livestock and game and to trap fur-bearing animals for financial gain. We conclude, however, that A.R.S. section 17–301(D) is not a special law because its classification furthers a legitimate government objective, it

3. Defendants also argued that the statute did not conform with the Enabling Act of Arizona, that it violated the Commerce Clause of the United States Constitution, and that it was unconstitutionally vague and overbroad. Defendants abandon these arguments on appeal. *See State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989).

encompasses all members of the relevant class, and the class is flexible.

¶ 7 The Arizona Constitution prohibits any special or local law "granting any individual any special or exclusive privilege or immunities," or "when a general law can be made applicable." Art. 4, part 2, § 19(13), (20). The prohibition against special legislation is intended to prevent the legislature from providing special benefits and favors to certain groups or locations. *See State Compensation Fund*, 174 Ariz. at 192, 848 P.2d at 277. A law is not a "special" law if (1) the classification is rationally related to a legitimate government objective, (2) the classification encompasses all members of the relevant class, and (3) the class is flexible, allowing members to move into and out of the class. *See Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990). If a law treats all members of a class alike and the classification is reasonable, the law is not special legislation. *See Lerma v. Keck*, 186 Ariz. 228, 234, 921 P.2d 28, 34 (App.1996). Also, the classification must be accepted as reasonable unless "palpably arbitrary." *Tucson Elec. Power Co. v. Apache County*, 185 Ariz. 5, 13, 912 P.2d 9, 17 (App. 1995).

¶ 8 We first consider whether section 17–301(D)'s classification based on location is rationally related to a legitimate purpose. The statute establishes classifications based on location; it prohibits the use of leghold traps on public land but not on private land. The information pamphlet on Proposition 201 indicates that among the purposes of the law are the prevention of cruelty to animals on public land and the protection from injury of pets, children, and adults on public land. We believe the statute rationally furthers these legitimate governmental interests.

¶ 9 Defendants agree that prevention of cruelty to animals on public lands is a legitimate State interest, but argue that the classification does not rationally further that interest. Defendants assert that the only rational means of furthering the State's interest in preventing cruelty to animals, assuming that leghold traps are cruel, would be to enact a general law prohibiting the use of leghold traps throughout the State on both public and private land. However, to be general, a law need not apply to every person, place, or thing within the State; the law must apply uniformly to those cases and members within the circumstances provided for by the law. *See Republic Inv. Fund I*, 166 Ariz. at 150, 800 P.2d at 1258. While a law governing all land throughout the State would certainly further the State's interest in preventing cruelty to animals, it does not necessarily follow that the approach taken by the initiative does not further the State's interests. Legislation can be enacted one step at a time, addressing first what is perceived as the most acute aspect of a problem. *See Lerma*, 186 Ariz. at 234, 921 P.2d at 34. Consequently, Defendants are mistaken in assuming that only a statute prohibiting all leghold trapping could further the interest involved.

¶ 10 We do not believe the classification here to be palpably arbitrary. The people of Arizona could legitimately determine that cruelty to animals should be eliminated on land belonging to the people of the State and that the State should prohibit the use of devices perceived to be inhumane and cruel. The statute furthers that purpose.

¶ 11 The statute also furthers the State's interest in preventing injury to people who use public lands for recreation. The classification between private and public lands is reasonably related to this purpose of the statute. Unlike private land, in which the owner has control over the access of individuals onto the property, public lands are accessible to and used by the general public. The private owner, being responsible for his property, would presumably know of the presence of traps that might pose a danger and be able to warn anyone admitted on the property to avoid injury. Such is not the case on public lands, where anyone using the land might accidentally and unexpectedly place a foot in one of the traps, causing injury. Prohibiting the placement of leghold traps on public lands furthers the purpose of the statute to protect users of public lands from injury caused by the traps.

¶ 12 We next consider whether the statute meets the second requirement of a general law. This requirement mandates that the classification encompass all members of the

relevant class. The statute precludes use of leghold traps on public lands. It thus creates a class of all persons wishing to trap on public land throughout the State—this class is prohibited from using leghold traps. The restriction is equally applicable to all members of the class, that is, all people using public lands. Thus, the statute meets this requirement.

¶ 13 The third requirement of a general law is that the class be flexible. Defendants argue that because of the limited amount of private land available in Arizona, the class is static. The existing private land, although limited, can be sold and purchased or leased, allowing movement in and out of the class. Thus, a person who buys or leases private land may use leghold traps on that property. But if that person then sells or surrenders his or her lease to that private property, that person cannot then use leghold traps on public lands. Therefore, we conclude that the class created here is elastic.

¶ 14 In their reply brief, Defendants assert that the statute gives a special class of landowners the privilege of harvesting publicly owned wildlife. Defendants argue this privilege is a significant right, but they fail to demonstrate how it impacts the three-part test to determine whether the statute is a general or special law. Furthermore, we note that persons using public rather than private lands are not precluded from harvesting the State's wildlife. They are simply precluded from using a specific method, deemed cruel and dangerous, to do so.

### Equal Protection

¶ 15 Defendants also claim that A.R.S. section 17–301(D) violates the equal protection clauses of the United States and Arizona Constitutions. *See* U.S. Const. amend. XIV, § 1; Ariz. Const. art. 2, § 13. The effects of the two provisions are essentially the same. *See Westin Tucson Hotel Co. v. State Dep't of Revenue,* 188 Ariz. 360, 366, 936 P.2d 183, 189 (App.1997). Because the statute implicates neither a fundamental right nor a suspect class, we apply a rational basis test. *See Phoenix Newspapers, Inc. v. Purcell,* 187 Ariz. 74, 78, 927 P.2d 340, 344 (App.1996). Under the rational basis test, the statute must be rationally related to furthering some legitimate governmental inter-

est. *See Big D Const. Corp. v. Court of Appeals,* 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990). A classification can be based on rational speculation unsupported by evidence. *See F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). An equal protection analysis of whether the statute is rationally related to a legitimate State interest is similar to the initial analysis conducted in determining if the statute constitutes a special or general law. *See Republic Inv. Fund I,* 166 Ariz. at 149, 800 P.2d at 1257. As part of our decision that section 17–301(D) is not a special law, we concluded that it is rationally related to a legitimate purpose. Thus, we also conclude that the statute does not violate the equal protection clauses of the Arizona and United States Constitutions.

¶ 16 Defendants argue that the statute is not rationally related to a legitimate state interest because A.R.S. section 17–301(D) is a wildlife statute that "frustrates" sound wildlife management and impedes "professional game management objectives." Therefore, according to Defendants, the statute cannot be considered as furthering a legitimate State interest.

¶ 17 For support, Defendants rely on *State v. Austin,* 217 Mont. 265, 704 P.2d 55, 56–57 (1985). There, the Montana Supreme Court struck down a statute that created an absolute liability offense for those possessing weapons to spotlight from a vehicle in an area where wildlife or livestock could be expected to be. The statute allowed exceptions for landowners, lessees, and their agents on their own land. *See id.* The court concluded that the state interest involved was wildlife management and that the statute allowing the exceptions was not rationally related to that interest. *See id.* at 58–59.

¶ 18 *Austin* does support Defendants' contention that a statute creating distinctions between public and private lands is not rationally related to the state's interest in wildlife management. In *Austin,* the court did not consider whether any other legitimate state interests were involved that would support the statute. Here, our statute's purpose is not limited to wildlife management.

¶ 19 We acknowledge that wildlife management certainly could be one of the State

interests addressed by A.R.S. section 17–301(D). But other State interests are also implicated. The State has a legitimate interest in preventing cruelty to animals. *See, e.g.,* A.R.S. § 13–2910 (prohibiting cruelty to animals on either public or private property).[4] The State also has a legitimate interest in protecting users of public lands from injuries. Thus, Defendants are mistaken in contending that only wildlife management can be considered a legitimate State interest in analyzing the validity of the statute.

¶ 20 We therefore conclude that the prohibition of leghold traps on public lands is rationally related to the purposes of the statute. The drafters of the legislation and those voting for it could have concluded that the statute would achieve the purposes intended. Defendants have not shown otherwise.

### Conclusion

¶ 21 Defendants' convictions are affirmed.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and NOEL FIDEL, Judge.

---

4. *Cf. Campbell v. Superior Court.,* 186 Ariz. 526, 527, 924 P.2d 1045, 1046 (App.1996) (defendant who put poisoned food on his front lawn to keep dogs off his grass was convicted of cruelty to animals after a neighbor's cat ate some of the poisoned food).