33 P.3d 499

Faik KURTI, Sequine Kurti, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

MARICOPA COUNTY, Defendant–Appellee,

Phyllis Biedess, in her capacity as the Director of Arizona Health Care Cost Containment System, Intervenor–Appellee.

No. 1 CA–CV 01–0055.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 20, 2001.

Anthony B. Ching, Tempe, Attorney for Plaintiffs–Appellants.

Richard M. Romley, Maricopa County Attorney by Gordon J. Goodnow, Jr., Deputy County Attorney, Phoenix, Attorneys for Defendant–Appellee.

Johnston & Kelly, P.L.C., by Logan T. Johnston, Phoenix, Attorneys for Intervenor–Appellee.

## OPINION

RYAN, Judge.

■ ¶ 1 Faik and Sequine Kurti are qualified aliens [1] who entered the United States on September 24, 1998. Both need non-emergency medical care for serious illnesses, but were denied non-emergency indigent health care from state and county programs because they failed to meet the eligibility requirements for qualified aliens under Arizona Revised Statutes ("A.R.S.") sections 36–2903.03, 11–297(B), and 11–291(A) (Supp. 2000). These statutes limit indigent health care for qualified aliens who entered the United States after August 22, 1996, to emergency care. The Kurtis challenge the denial of state and county indigent health care ben-

---

1. "Qualified aliens" include "alien[s] who [are] lawfully admitted for permanent residence under the Immigration and Nationality Act [8 U.S.C. § 1101 *et seq.*]." *See* 8 U.S.C. § 1641(b)(1) (1999 ed., Supp. V), *referenced in* A.R.S. § 36–2903.03(G) (Supp.2000).

efits, contending that §§ 36–2903.03, 11–297(B), and 11–291(A) violate the Equal Protection Clauses of the United States and Arizona Constitutions. *See* U.S. Const. amend. XIV, § 1; Ariz. Const. art. 2, § 13. We hold that these statutes are unconstitutional because they are inconsistent with federal immigration laws and further no compelling governmental interest.

## BACKGROUND

¶ 2 The eligibility requirements for qualified aliens to receive benefits under the Arizona Health Care Cost Containment System ("AHCCCS") program are set forth in A.R.S. § 36–2903.03. Section 36–2903.03(B) permits any qualified alien "who entered the United States on or before August 21, 1996" to be eligible for all services under § 36–2907. Section 36–2907 provides inpatient and outpatient medical care coverage for those eligible under the AHCCCS program; such coverage includes non-emergency and emergency care. *See* A.R.S. § 36–2907(A),(K). But under § 36–2903.03(D), "a qualified alien who entered the United States on or after August 22, 1996" and "who is not a member of one of the excep-

tion groups ... shall receive only emergency medical services." [2]

¶ 3 Similarly, the eligibility requirements for the county's indigent health care program contained in A.R.S. §§ 11–297(B)(5) and 11–291(A) incorporate the eligibility limitations set forth in A.R.S. § 36–2903.03.[3] Thus, both the state and county programs render qualified aliens who entered the United States on or after August 22, 1996, ineligible for non-emergency indigent health care unless they are members of an exception group as prescribed in A.R.S. § 36–2903.03.

¶ 4 Because the Kurtis entered the United States after August 21, 1996, and do not fall within any exception group, they were declared ineligible for non-emergency indigent health care under the state and county programs.

¶ 5 The Kurtis filed a complaint against Maricopa County and Phyllis Biedess, in her capacity as the Director of AHCCCS, challenging the constitutionality of Arizona's alien eligibility requirements to the county and state funded indigent health care programs. Specifically, they sought injunctive and declaratory relief barring application of A.R.S. § 36–2903.03 to themselves and others similarly situated.[4] Appellees filed mo-

**2.** A.R.S. § 36–2903.03(D) states as follows:

> D. A qualified alien who entered the United States on or after August 22, 1996 may apply for eligibility pursuant to § 36–2901, paragraph 4, subdivision (b) and, if otherwise eligible for title XIX, may receive services pursuant to the following:
> 1. A qualified alien who is designated as a member of one of the exception groups under [8 U.S.C. § 1613] or a minor who has entered the United States as an adoptee of a United States citizen shall be determined eligible for all title XIX services as specified in § 36–2907.
> 2. A qualified alien who is not a member of one of the exception groups as defined in [8 U.S.C. § 1613] shall receive only emergency services as defined in § 1903(v) of the social security act [42 U.S.C. § 1396b].

**3.** Section 11–297(B)(5) provides, in relevant part, the following:

> For the purposes of this section, an "indigent" is a resident of the county who: ... [e]xcept as provided in subsection J of this section or for emergency care required by § 36–2905.05, meets one of the following requirements for citizenship or alien status: (a) Is a citizen of the United States[;] (b) Is a

qualified alien who entered the United States on or before August 21, 1996 as prescribed in § 36–2903.03[;] (c) Is a qualified alien who entered the United States on or after August 22, 1996 and is a member of an exception group as prescribed in § 36–2903.03.
(Emphasis added.)

Section 11–291(A) provides, in relevant part, the following:

> For the purposes of this section, an indigent is a resident of the county who is otherwise eligible for county services and, except for emergency services provided to persons who are in fact eligible pursuant to § 36–2905.05, who meets one of the following requirements for citizenship or alien status: 1. Is a citizen of the United States[;] 2. Is a qualified alien who entered the United States on or before August 21, 1996 as prescribed in § 36–2903.03[;] 3. Is a qualified alien who entered the United States on or after August 22, 1996 and is a member of an exception group as prescribed in § 36–2903.03.
(Emphasis added.)

**4.** The trial court apparently did not certify this case as a class action and the parties do not address the issue on appeal.

tions to dismiss or, alternatively, motions for summary judgment, arguing that the state laws do not violate the Equal Protection Clauses of the United States and Arizona Constitutions because they mirror federal law governing alien eligibility for public benefits. The Kurtis responded and filed a cross-motion for summary judgment, arguing that Arizona's laws are more restrictive than federal law and that, unlike Congress, states cannot impose such restrictions on alien eligibility for state and county aid programs.

¶ 6 The trial court issued a preliminary injunction ordering Maricopa County to continue to provide medical care to Mr. Kurti. After hearing oral argument on the parties' motions, the trial court granted Appellees' motion to dismiss. The trial court found that A.R.S. § 36–2903.03 was constitutional because it mirrored the eligibility requirements for indigent health care under federal programs and because Congress authorized the states to impose residency requirements on aliens to be eligible for state benefits. The court found the constitutionality of A.R.S. § 36–2903.03 supported by *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Sudomir v. McMahon*, 767 F.2d 1456 (9th Cir.1985); and *Cid v. South Dakota Dep't of Social Services*, 598 N.W.2d 887 (S.D.1999). The Kurtis appealed.

### DISCUSSION

■■■ ¶ 7 In reviewing the constitutionality of a statute, we generally presume that the statute is constitutional and must construe it, if possible, to give it constitutional meaning. *State v. Bonnewell*, 196 Ariz. 592, 594, ¶ 5, 2 P.3d 682, 684 (App.1999) (citing *State Comp. Fund v. Symington*, 174 Ariz. 188, 193, 848 P.2d 273, 278 (1993)). In addition, the party alleging the constitutional violation generally bears the burden of proving it. *Id.* (citation omitted). But, "where the regulation in question impinges on core constitutional rights, the standards of strict scrutiny apply and the burden of showing

constitutionality is shifted to the proponent of the regulation." *Ruiz v. Hull*, 191 Ariz. 441, 448, ¶ 25, 957 P.2d 984, 991 (1998) (citations omitted).

■■■ ¶ 8 The United States Constitution prohibits each state from "deny[ing] to any person within its jurisdiction the equal protection of laws." U.S. Const.amend. XIV, § 1. " 'Person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

■■■ ¶ 9 Appellees argue, and the trial court agreed, that Arizona's statutes denying certain groups of qualified aliens indigent health care are constitutional because they are based on federal law, which imposes the same restrictions on qualified aliens. We conclude that the eligibility requirements of A.R.S. §§ 36–2903.03, 11–297(B), and 11–291(A) do not mirror the federal eligibility requirements, thus necessitating a strict scrutiny analysis of the state statutes.[5] We further conclude that the state and county eligibility requirements are unconstitutional because they cannot withstand strict scrutiny under the Equal Protection Clause of the United States Constitution.

¶ 10 In *Graham v. Richardson*, 403 U.S. at 376, 91 S.Ct. 1848, the Supreme Court held that "a state statute that denies welfare benefits … to aliens who have not resided in the United States for a specified number of years violate[s] the Equal Protection Clause." *Graham* involved an Arizona statute imposing a fifteen-year residency requirement on aliens in order to qualify for county benefits. *Id.* at 367, 91 S.Ct. 1848. In evaluating the constitutionality of the residency requirement, the Court applied a strict scrutiny analysis. *Id.* at 376, 91 S.Ct. 1848.

---

5. Because the state statutes here do not mirror the federal law, we find it unnecessary to decide what the appropriate standard of review would be if Arizona's statutes did mirror the federal law. *But see Aliessa v. Novello*, 96 N.Y.2d 418, 434, 730 N.Y.S.2d 1, 13, 754 N.E.2d 1085, 1097 (2001) (applying strict scrutiny to New York law excluding non-emergency Medicaid coverage for certain aliens, notwithstanding the law's incorporation of the Welfare Reform Act's eligibility requirements).

Under the strict scrutiny standard, the Court held that preserving limited welfare benefits for the state's own citizens did not justify a state classification based on alienage. *Id.* at 374–75, 91 S.Ct. 1848.

¶ 11 In addition, the Court compared the state residency requirement to federal immigration laws, which, at that time, did not impose any restrictions on aliens' eligibility for benefits. *Id.* at 377, 91 S.Ct. 1848. Because Arizona's law conflicted with "these overriding national policies in an area constitutionally entrusted to the Federal Government" and therefore "encroach[ed] upon exclusive federal power," the state law was constitutionally impermissible. *Id.* at 378, 380, 91 S.Ct. 1848.

¶ 12 In a footnote, the *Graham* Court left open the question whether Congress, rather than the states, could impose a uniform residency requirement as a condition of federally funded welfare benefits. *Id.* at 382 n. 14, 91 S.Ct. 1848. Five years after *Graham*, the Court addressed this question in *Mathews*, 426 U.S. at 69, 96 S.Ct. 1883. In *Mathews*, the Supreme Court upheld a restriction imposed by Congress, which denied federal health care benefits to aliens unless they had been admitted for permanent residence and also had resided in the United States for a five-year period. *Id.* at 70, 96 S.Ct. 1883 (upholding 42 U.S.C. § 1395o (1970 ed., Supp. IV)).

¶ 13 The Supreme Court recognized that Congress has a legitimate basis for distinguishing among aliens because of its exclusive responsibility for regulating the relationship between the United States and aliens. *Id.* at 81, 96 S.Ct. 1883. The Court noted that immigration policy "may implicate our relations with foreign powers, and . . . a wide variety of classifications must be defined in the light of changing political and economic circumstances." *Id.* The Court further held that "it is the business of the political branches of the Federal Government, rather than that of either the States or the Federal Judiciary, to regulate the conditions of entry and residence of aliens." *Id.* at 84, 96 S.Ct. 1883. On the other hand, the Court concluded that

states have no similarly legitimate justification for discriminating against aliens. *Id.* at 84–85, 96 S.Ct. 1883. Distinguishing the state-imposed residency requirements in *Graham*, the *Mathews* Court said the following:

> Insofar as state welfare policy is concerned, there is little, if any, basis for treating persons who are citizens of another State differently from persons who are citizens of another country. Both groups are noncitizens as far as the State's interests in administering its welfare programs are concerned. Thus, a division by a State of the category of persons who are not citizens of that State into subcategories of United States citizens and aliens has no apparent justification, whereas, a comparable classification by the Federal Government is a routine and normally legitimate part of its business.

*Id.* at 85, 96 S.Ct. 1883 (footnote omitted). *Mathews* also distinguished the constitutional limits on a state's ability to impair an alien's right to travel within the United States from Congress's undisputed power to prevent the travel of aliens into this country as further support for a federal, but not a state classification. *Id.* at 85–86, 96 S.Ct. 1883.

¶ 14 Twenty years after *Mathews*, the President signed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, also known as the Welfare Reform Act. *See* 8 U.S.C. §§ 1601–1646 (1999 ed., Supp. V). The Act, in part, is a comprehensive statutory scheme for determining aliens' eligibility for federal, state, and local benefits. *Id.* Congress explicitly stated a national public immigration policy of removing the availability of public benefits as an incentive for immigration and of promoting the self-sufficiency of aliens. *See* 8 U.S.C. § 1601. Consistent with the *Mathews* decision, the federal statute provides that federal means-tested public benefits, including health care benefits, are not available to qualified aliens who entered the United States on or after August 22, 1996, for a period of five years from the date of the alien's entry into the United States. *See* 8 U.S.C. § 1613(a).[6]

6. There are several exceptions to this restriction, none of which applies to the Kurtis. *See* 8

¶ 15 Appellees claim that because Arizona's laws follow the federal classification and policy regarding alien eligibility for public benefits, a rational basis standard of review should be applied to the analysis of Arizona's statutes. They rely on two cases: *Sudomir*, 767 F.2d at 1456–68, and *Cid*, 598 N.W.2d at 887–93. Without deciding whether *Sudomir* and *Cid* correctly used a rational basis test, we conclude that these cases are nevertheless distinguishable because Arizona's statutes are not consistent with the federal laws.

¶ 16 In *Sudomir*, the Ninth Circuit Court of Appeals held that California's denial of welfare benefits to aliens not admitted for permanent residence or otherwise permanently residing in the United States under color of law did not violate equal protection because the state laws followed the federal classification and policy regarding the appropriate standards for the treatment of a particular class of aliens. 767 F.2d at 1466. The classification Congress created was "valid because of its plenary power over immigration," and California properly adopted that policy regarding eligibility of aliens for federally supported welfare programs. *Id.* at 1466–67. Similarly, in *Cid*, the Supreme Court of South Dakota upheld a state administrative rule that adopted the federal classification and imposed an identical limitation on qualified aliens' eligibility for benefits. 598 N.W.2d at 891–93.

■ ¶ 17 In both *Sudomir* and *Cid*, the state statutes were subjected only to rational basis scrutiny because the state statutes and regulations at issue were consistent with and adopted the federal classifications. *Sudomir*, 767 F.2d at 1464, 1466; *Cid*, 598 N.W.2d at 892. Under rational basis scrutiny, federal classifications distinguishing among groups of aliens are valid unless "wholly irrational." *Sudomir*, 767 F.2d at 1464 (*citing Mathews*, 426 U.S. at 83, 96 S.Ct. 1883); *see also Kenyon v. Hammer*, 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (noting that under the

rational basis test, "equal protection is violated 'only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective.'") (*quoting McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

¶ 18 Unlike the statutes at issue in *Sudomir* and *Cid*, Arizona's statutes regarding alien eligibility for health care benefits are not consistent with federal law. Federal law provides that qualified aliens who entered the United States on or after August 22, 1996 and who are not designated as a member of one of the exception groups under 8 U.S.C. § 1613(b) become eligible for federal health care benefits five years after the date of entry into the United States. *See* 8 U.S.C. § 1613(a). But Arizona's eligibility requirements do not allow the same subclass of qualified aliens to become eligible for indigent health care five years after the date of entry into the United States. Rather, under A.R.S. § 36–2903.03(D), qualified aliens who entered the United States on or after August 22, 1996 and who are not designated as a member of one of the exceptions under 8 U.S.C. § 1613(b) or a minor adopted by a citizen, are only entitled to emergency services. Thus, unlike the federal statutes, Arizona's law forever denies a certain subclass of qualified aliens from receiving state or county indigent health care. Thus, Appellees' reliance on *Sudomir* and *Cid* is misplaced.

■ ¶ 19 The trial court concluded that Arizona's statute impliedly "incorporat[ed]" the federal statute's five-year residency requirement, and was, therefore, identical to the federal law. But, neither the trial court nor Appellees have pointed to any statutory basis that would support such an implied incorporation.[7] Thus, in the absence of an inferential basis for the alleged incorporation, we decline to read such specific language into the state and county eligibility requirements. *Cf. Hartford Accident & Indem. Co. v. Ariz.*

U.S.C. § 1613(b).

7. At oral argument, counsel for the County suggested that the existence of a five-year limitation in the Arizona statutes had never been an issue between the parties. He agreed, however, that without the five-year limitation, there would be

an equal protection "problem." Counsel for AHCCCS proposed that the "whole tenor" of the Arizona laws suggests the incorporation of a five-year limitation. Such a tenuous reference does not support our reading into the statute a very specific five-year limitation.

*Dep't of Transp.,* 172 Ariz. 564, 568, 838 P.2d 1325, 1329 (App.1992) (stating that when Arizona models a statute after a federal statute but changes some of the language, interpretations of the federal statute are not persuasive on points on which the language of the statutes differs).

¶ 20 Appellees also point out that Congress authorized the states to determine qualified aliens' eligibility for state public benefits. 8 U.S.C. § 1622(a). However, such congressional authorization cannot excuse states from compliance with the mandates of equal protection. *See, e.g., Graham,* 403 U.S. at 382, 91 S.Ct. 1848 ("Congress does not have the power to authorize the individual States to violate the Equal Protection Clause.") (citing *Shapiro v. Thompson,* 394 U.S. 618, 641, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) *rev'd in part on other grounds, Edelman v. Jordan,* 415 U.S. 651, 670, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

¶ 21 Because Arizona's statues do not follow the federal law regarding the treatment of a particular subclass of aliens, the challenged eligibility requirements are subject to strict scrutiny. *See Graham,* 403 U.S. at 376–80, 91 S.Ct. 1848; *see also Cabell v. Chavez–Salido,* 454 U.S. 432, 439, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982) (holding that state restrictions that primarily affect lawfully resident aliens' economic interests, as opposed to political interests, are subject to heightened judicial scrutiny); *Aleman v. Glickman,* 217 F.3d 1191, 1197–98 (9th Cir.2000) (holding that while federal classifications discriminating among aliens in distribution of welfare benefits are subject to rational basis review, state classifications have been held to a higher standard); *City of Chicago v. Shalala,* 189 F.3d 598, 603 (7th Cir.1999), *cert. denied,* 529 U.S. 1036, 120 S.Ct. 1530, 146 L.Ed.2d 345 (2000) (stating that while a heightened scrutiny standard applies to state statutes, that standard does not apply to review of federal legislation involving alienage); *Rodriguez v. United States,* 169 F.3d 1342, 1347 (11th Cir.1999) (concluding that a strict scrutiny standard applies ·to equal protection challenges to state classification of aliens, but not to Congress's classification of aliens).[8]

¶ 22 Under the strict scrutiny standard, the state must "demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." *Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *see also Kenyon,* 142 Ariz. at 78, 688 P.2d at 970 (noting that a discriminatory statute will withstand strict scrutiny "only if there is a 'compelling state interest' to be served and the regulation is 'necessary' to achieve the legislative objective") (citations omitted).

¶ 23 Appellees assert that Arizona's statutes satisfy strict scrutiny because they further a compelling governmental interest of following and implementing a uniform policy regarding the eligibility of qualified aliens for public benefits. However, as discussed above, Arizona's statutes are more restrictive than the federal law and policy to which they purport to adhere. Moreover, because Arizona's statutes discourage entry into or continued residence in Arizona, they conflict with the "constitutionally derived federal power to regulate immigration" and may be invalidated on federal preemption grounds. *Graham,* 403 U.S. at 378, 91 S.Ct. 1848 (quoting *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948)). Thus, we reject Appellees' claim that § 36–2903.03 implements the federal immigration policy and its uniform rules regarding alien eligibility for public benefits.

¶ 24 Appellees offer no other legitimate purpose for the discriminatory classification. The State's desire to preserve limited welfare benefits for its own citizens is insufficient justification for a restriction against a certain subclass of aliens. *See Graham,* 403 U.S. at 374–75, 91 S.Ct. 1848. The classification furthers no uniform state policy regarding treatment of particular aliens because qualified aliens are eligible for other state benefits. *See* A.R.S. § 46–233(A)(6) (Supp.2000) (stating that an alien who is legally admitted

---

8. We also note that *Mathews, Sudomir,* and *Cid* are distinguishable for the additional reason that they involved restrictions placed on federally funded programs. *Mathews,* 426 U.S. at 70, 96 S.Ct. 1883; *Sudomir,* 767 F.2d at 1466–67; *Cid,* 598 N.W.2d at 889. In contrast, the Kurtis are only challenging the application of A.R.S. § 36–2903.03 to state- and county-funded programs.

for permanent residence is eligible for general assistance under the state welfare program). In short, Appellees have failed to establish that § 36–2903.03 furthers any compelling state interest.

## CONCLUSION

¶ 25 Accordingly, we hold that A.R.S. § 36–2903.03, and §§ 11–291 and 11–297, which refer to § 36–2903.03, violate the Equal Protection Clause of the United States Constitution.[9] We reverse the judgment in favor of Appellees.

¶ 26 The Kurtis have requested an award of attorney's fees on appeal pursuant to 42 U.S.C. § 1988 (1998 ed., Supp. IV). In the exercise of our discretion under § 1988, we award the Kurtis reasonable attorney's fees upon their compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

ANN A. SCOTT TIMMER, Judge and JOHN C. GEMMILL, Judge concurring.

---

9. Because we conclude that the statutes at issue are invalid under the United States Constitution, we need not address their validity under the Arizona Constitution.