78 P.3d 280 (2003)
206 Ariz. 311
Bruno AVILA and Cresencia Avila, husband and wife, Plaintiffs-Appellants,
v.
Phyllis BIEDESS, Director of the Arizona Health Care Cost Containment System, Defendants-Appellees,
Falk Kurti; Sequine Kurti, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,
v.
Phyllis Biedess, Director of the Arizona Health Care Cost Containment System, Defendant-Appellant.
Nos. 1 CA-CV 02-0648, 1 CA-CV 02-0741.
Court of Appeals of Arizona, Division 1, Department D.
October 28, 2003.
*282 William E. Morris Institute for Justice By Thomas Berning and Southern Arizona Legal Aid, Inc. By Lydia Glasson, Tucson, Attorneys for Plaintiffs-Appellants Avila.
Anthony B. Ching, Tempe, Attorney for Plaintiffs-Appellees Kurti.
Johnston & Kelly, P.L.C. By Logan T. Johnston, Phoenix, Attorneys for Defendants-Appellees AHCCCS and Biedess.
Arizona Civil Liberties Union By Laura Carroll, Cooperating Counsel, Pamela K. Sutherland, Legal Director and James E. Rogers College of Law, University of Arizona By Andrew Silverman, Joseph M. Livermore, Professor and Director, Clinical Programs, Tucson, Amicus Curiae for Plaintiffs-Appellants Avila.

OPINION
IRVINE, Judge.
¶ 1 This appeal addresses whether Arizona's Title XIX Medicaid program and state-funded Premium Sharing Program violate the United States and Arizona Constitutions by denying benefits to aliens who have not been legal residents of this country for at least five years. We conclude that they do not.

FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 This appeal consolidates two superior court actions against the same defendant, the *283 Arizona Health Care Cost Containment System ("AHCCCS"). Both cases challenged the constitutionality of a state law limiting eligibility for Arizona's Title XIX Medicaid program, which is jointly funded by the federal government and the state.[1] Arizona Revised Statutes ("A.R.S.") section 36-2903.01(B)(5). Both cases also raised a challenge to the limitation as applied to a wholly state-funded health care program, the Premium Sharing Program.[2]
¶ 3 Section 36-2903.03(B), A.R.S., allows qualified aliens[3] to apply for Title XIX benefits if they entered the country prior to August 21, 1996, and were continuously present in the United States since that date. Qualified aliens who entered this country after August 21, 1996, are eligible only for emergency medical services until they have lawfully resided in the United States for five years. A.R.S. § 36-2903.03(B), (D). Arizona enacted this limitation on eligibility after Congress passed the Welfare Reform Act of 1996.[4] 8 U.S.C. §§ 1601-44. In the Act, Congress restricted public benefits in numerous ways. Specifically, federal law now provides that qualified aliens are not eligible for any federal means-tested public benefit, including Medicaid, unless they have lived in this country since before August 21, 1996, or have been a qualified alien for at least five years. 8 U.S.C. § 1613.
¶ 4 The plaintiffs in the first case are Faik and Sequine Kurti ("Kurtis"), citizens of Albania who came to the United States on September 24, 1998. They are qualified aliens who are indigent and claim they would be eligible for health care funded by AHCCCS or by Maricopa County but for the requirements in the Arizona statute limiting aliens who entered the United States after August 21, 1996 to emergency services until they have resided in this country for five years. The Kurtis sued AHCCCS, raising an equal protection challenge to the state statute and arguing that they should be eligible for AHCCCS benefits under either the Title XIX program or the state-funded Premium Sharing Program.[5] AHCCCS moved to dismiss the complaint for failure to state a claim, or for lack of standing on the grounds that the Kurtis had not applied for or were ineligible for the Premium Sharing Program. The superior court did not rule on the motion to dismiss, but granted a temporary restraining order determining that A.R.S. § 36-2903.03 is an unconstitutional violation of *284 equal protection as to Mr. Kurti.[6] The court later entered final judgment in the Kurtis' favor on this issue, pursuant to Rule 54(b), Arizona Rules of Civil Procedure ("A.R.C.P."), and AHCCCS timely filed this appeal.
¶ 5 The second case involves Bruno and Cresencia Avila ("Avilas"),[7] Mexican citizens who have been lawful permanent residents of the United States since April 16, 1999. Like the Kurtis, they are qualified aliens who are indigent and claim they would be eligible for health care funded by AHCCCS but for the requirements found in A.R.S. § 36-2903.03(B). The Avilas sued AHCCCS, raising an equal protection challenge to the state statute and arguing that they should be eligible for AHCCCS under the basic Title XIX program.[8] The parties cross-moved for partial summary judgment on, among other issues, equal protection. The superior court granted AHCCCS's motion for partial summary judgment, finding the statute constitutional, and entered a final judgment pursuant to Rule 54(b), A.R.C.P., in its favor. The Avilas timely filed this appeal.
¶ 6 Pursuant to Plaintiffs'[9] motion, the court consolidated the two appeals. The court also accepted an amicus curiae brief filed by the Arizona Civil Liberties Union ("AzCLU") in support of Plaintiffs.

ISSUES
1. Whether the federally-funded Title XIX AHCCCS program violates Plaintiffs' equal protection rights by utilizing federal eligibility standards that are based upon alien status?
2. Whether the wholly state-funded Premium Sharing Program violates Plaintiffs' equal protection rights by adopting the same standards?

DISCUSSION

I. GENERAL PRINCIPLES.
¶ 7 Plaintiffs challenge the constitutionality of A.R.S. § 36-2903.03(B), arguing that it violates their equal protection rights under both the federal and state constitutions. This Court reviews de novo the constitutionality of a statute. Little v. All Phoenix S. Community Mental Health Center, Inc., 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995). We presume that a statute is constitutional and must construe it, if possible, to give it a constitutional meaning. State v. Bonnewell, 196 Ariz. 592, 594, ¶ 5, 2 P.3d 682, 684 (App.1999) (citing State Comp. Fund v. Symington, 174 Ariz. 188, 193, 848 P.2d 273, 278 (1993)). Ordinarily, the party challenging the constitutionality of a statute has the burden of proving it unconstitutional. Tucson Electric Power Co. v. Apache County, 185 Ariz. 5, 11, 912 P.2d 9, 15 (App.1995).
¶ 8 The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[10] U.S. Const. amend. XIV, § 1. The word "person" in this context includes "both lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." Graham v. Richardson, 403 U.S. 365, 371, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).
*285 ¶ 9 Plaintiffs argue that the Arizona statute in question is subject to strict scrutiny review and that AHCCCS cannot demonstrate a compelling governmental interest justifying the disparate treatment of qualified aliens and United States citizens. Generally, a state law that discriminates against legal immigrants in the distribution of economic benefits is subject to strict scrutiny. See Graham, 403 U.S. at 375-76, 91 S.Ct. 1848. In some circumstances, however, this rule does not apply to state laws that adopt uniform federal guidelines regarding the eligibility of aliens for benefits. See, e.g., Sudomir v. McMahon, 767 F.2d 1456, 1466 (9th Cir.1985). In those instances, courts apply a rational basis standard of review, determining whether there is a rational relationship between the disparate treatment of citizens and aliens and some legitimate governmental purpose. Id. at 1465-66.
¶ 10 Courts follow a rational basis standard in such circumstances because the United States Constitution gives Congress plenary authority to legislate on immigration and alienage issues. U.S. Const. art. I, § 8, cl. 4; see Mathews v. Diaz, 426 U.S. 67, 81-85, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (finding that congressional restrictions on welfare benefits for aliens are subject to a rational basis analysis). Therefore, Congress "may distinguish and discriminate between citizens and aliens in ways that a state may not do on its own, and it may establish uniform national guidelines and policies dictating how States are to regulate and legislate issues relating to aliens." Doe, 773 N.E.2d at 409 (citations omitted).
¶ 11 In contrast, because the Fourteenth Amendment explicitly restricts state power, courts routinely strictly scrutinize state laws that create alienage classifications for distribution of economic benefits. See Cabell v. Chavez-Salido, 454 U.S. 432, 439, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982). As noted, an exception to this rule arises when the state law simply adopts national policies and guidelines. Doe v. Comm'r of Transitional Assistance, 773 N.E.2d 404, 409 (Mass. 2002).

II. FEDERALLY-FUNDED TITLE XIX PROGRAM.
¶ 12 AHCCCS asserts that Arizona has merely adopted the alienage restrictions on Medicaid benefits adopted by Congress in the Welfare Reform Act. Accordingly, it claims that Arizona law is consistent with and implements national immigration policy and, as a result, is subject only to rational basis review. See League of United Latin American Citizens v. Wilson, 997 F.Supp. 1244, 1254-55 (C.D.Cal.1997) (stating that the Welfare Reform Act "demarcate[s] a field of comprehensive federal regulation within which states may not legislate, and define[s] federal objectives with which states may not interfere."). The five-year eligibility restriction contained in the Welfare Reform Act (and incorporated into A.R.S. § 36-2903.03(B)) has been uniformly upheld by federal courts applying the rational basis standard. See, e.g., Lewis v. Thompson, 252 F.3d 567, 583-84 (2d Cir.2001) (Medicaid coverage for pregnant women); Aleman v. Glickman, 217 F.3d 1191, 1198-99 (9th Cir. 2000) (food stamps); Chicago v. Shalala, 189 F.3d 598, 605 (7th Cir.1999) (welfare benefits); Rodriguez v. United States, 169 F.3d 1342, 1347-48 (11th Cir.1999) (supplemental security income and food stamps).
¶ 13 Plaintiffs counter that Arizona has not adopted a "uniform" standard because the Welfare Reform Act does not create a uniform standard. While the Welfare Reform Act mandates the five-year eligibility standard for federal means-tested public benefits that Arizona has adopted in A.R.S. § 36-2903.03(B) (see 8 U.S.C. § 1613(a)), it also authorizes states to extend the period of ineligibility beyond five years (8 U.S.C. § 1612(b)(1)) or, conversely, permits states to provide state-funded Medicaid services to qualified aliens with less than five years' residence. 8 U.S.C. § 1622(a). In response to the Welfare Reform Act, states have adopted a wide variety of approaches (both more lenient and more restrictive than the federal approach) to providing non-emergency medical services to qualified aliens. See Zimmerman and Tumlin, Patchwork Policies: State Assistance for Immigrants Under Welfare Reform (The Urban Institute 1999), 30 *286 & Table 4.[11] Accordingly, Plaintiffs argue that there is no uniform federal law in this area and that Arizona's statute is subject to strict scrutiny review. We disagree.
¶ 14 The Title XIX portion of AHCCCS is a federally-funded means-tested public benefit and is subject to the mandatory five year legal residency restriction contained in federal law. States that opt to participate in Medicaid are required to accept federal standards under Title XIX in exchange for federal funding. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). By adopting the alienage eligibility standards for its Title XIX program that the federal government requires for federally-funded benefits and joint federal/state programs, Arizona has followed federal immigration policy and furthered that national policy. See Cid v. South Dakota Dep't of Social Services, 598 N.W.2d 887, 892 n. 10 (S.D.1999) (finding that state has not only legitimate, but "compelling interest in implementing the national immigration policy and in implementing uniform rules regarding alien eligibility for certain welfare benefits").
¶ 15 We conclude that whether the state could have chosen to apply a more generous, or more restrictive, standard is irrelevant when Arizona has opted to use the federal criteria that are mandatory for federally-funded programs. The contention that a state law might be subject to strict (or perhaps "intermediate") scrutiny regarding equal protection because the state had the option to be more liberal with its public benefits than the federal government was rejected by the Ninth Circuit in Sudomir. In that case, the plaintiffs argued that whenever states may adopt more liberal eligibility standards than the federal government, as a matter of state policy, a refusal to do so should be subject to a higher level of scrutiny than the rational basis test. 767 F.2d at 1465-66. The court rejected this argument, ruling that "[t]o so hold would amount to compelling the states to adopt each and every more generous classification which, on its face, is not irrational." Id. at 1466. We agree.
¶ 16 This case is distinguishable from Graham and its progeny, which hold that states may not act inconsistently with federal immigration laws by enacting laws that differ from or conflict with federal immigration policy. See Graham, 403 U.S. at 378, 91 S.Ct. 1848. Arizona has done neither. It has followed the federal immigration guidelines. As the Massachusetts Supreme Court noted in Doe, it would "make no sense to say that Congress has plenary power to legislate national immigration policies and guidelines subject to a deferential (rational basis) standard of review, and then to hold that the equal protection clause of the Constitution restrains States from adhering to or adopting those national policies and guidelines because their actions are subject to a higher (strict scrutiny) standard of review." 773 N.E.2d at 409.
¶ 17 Plaintiffs rely upon Aliessa v. Novello, 96 N.Y.2d 418, 730 N.Y.S.2d 1, 754 N.E.2d 1085 (2001), as support for their position that strict scrutiny is required. In that case, the New York Court of Appeals applied a strict scrutiny analysis to conclude that New York's Medicaid statute terminating benefits for non-qualified aliens was unconstitutional. Id. at 1098-99. We find this case distinguishable. The New York statute differs from those in the Welfare Reform Act by being more generous to some sub-groups of aliens than others. Id. As the state statute differed from the federal law, the court properly held it to a strict scrutiny analysis. See Kurti I, 201 Ariz. at 170-71, ¶¶ 15-21, 33 P.3d at 504-05. The Arizona statute mirrors the federal Act, so a rational basis review is appropriate. See 8 U.S.C. § 1613(a); A.R.S. § 36-2903.03(B); Sudomir, 767 F.2d at 1464-66. To the extent that Aliessa concluded that even state laws mirroring the provisions of the Welfare Reform Act do not reflect a uniform national policy (see Aliessa, 730 N.Y.S.2d 1, 754 N.E.2d at 1098), we disagree with that portion of the analysis.
¶ 18 Plaintiffs argue that even in matters related to immigration policy (where Congress has broad authority), Congress cannot authorize the states to violate any lawful permanent resident alien's right to equal protection *287 of the law. Plaintiffs assert that Congress has done precisely that by authorizing Arizona, and the other states, to enact the five-year residency requirement for legal aliens, thereby creating disparate treatment between legal aliens and United States citizens. Amicus Curiae further asserts that this discriminatory treatment cannot pass even the rational basis test.
¶ 19 Because Arizona has adopted the eligibility requirements mandated by Congress for federal and joint federal and state programs, we review the Arizona statute under a rational basis standard, not a strict scrutiny one. Sudomir, 767 F.2d at 1464-66. Arizona's interests in complying with national immigration policy and allocating scarce public resources meet this test. See 8 U.S.C. § 1601 (in adopting alienage classifications in the Welfare Reform Act, Congress noted national interest in encouraging aliens to become self-reliant and in preventing availability of public benefits from acting as incentive for immigration); see also Cid, 598 N.W.2d at 892-93 (explaining that state agency has legitimate interest in implementing nation's immigration policy). Therefore, we hold that the application of the five-year limitation to the Title XIX AHCCCS program does not violate equal protection.

III. STATE-FUNDED PREMIUM SHARING PROGRAM.
¶ 20 The Premium Sharing Program requires separate analysis because it is wholly state-funded. Congress has not mandated that states adopt any particular eligibility criteria for their own state-funded programs. 8 U.S.C. § 1622(a). Therefore, there is no uniform federal policy regarding eligibility for such benefits and an eligibility standard based on alien status would ordinarily be subject to strict scrutiny.
¶ 21 AHCCCS argues that strict scrutiny should not apply because Arizona's eligibility criteria mirror the federal government's. This is true in part. Arizona's criteria do contain the identical restriction contained in federal law. Nevertheless, Arizona has expanded the scope of the restriction beyond the congressional mandate. Congress has not required states to limit the eligibility of qualified aliens for state-funded programs in the same way that it has limited eligibility for federally funded programs. States are expressly allowed to develop their own criteria.[12] Under these circumstances we cannot say that Congress has adopted a uniform federal policy regarding eligibility for state-funded benefits.
¶ 22 AHCCCS also argues that Congress may delegate authority to states to determine eligibility in their own way even when the criteria are based on alien status. In the absence of a uniform federal policy, however, state actions must still be measured against Constitutional standards because the Supreme Court has "consistently held that Congress may not authorize the States to violate the Fourteenth Amendment." Saenz v. Roe, 526 U.S. 489, 508 & n. 21, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). As the Court concluded in Saenz:
Congress has no affirmative power to authorize the States to violate the Fourteenth Amendment and is implicitly prohibited from passing legislation that purports to validate any such violation.
Id. at 508, 119 S.Ct. 1518. Because Arizona has adopted eligibility criteria based on alien status that are not mandated by federal law, we conclude that strict scrutiny analysis is required.
¶ 23 "Under the strict scrutiny standard, the state must `demonstrate that its classification has been precisely tailored to serve a compelling governmental interest.'" Kurti I, 201 Ariz. at 171, ¶ 22, 33 P.3d at 505. AHCCCS argues that applying a national policy on immigration is sufficient to satisfy strict scrutiny. As noted above, however, Congress has not imposed a national policy on states regarding state-funded benefits for qualified aliens. A state cannot impose disabilities on aliens for its own programs merely because Congress has chosen to impose a similar disability for federal programs.
*288 ¶ 24 The distinctive aspect of this case, however, is that the Premium Sharing Program is essentially a state-funded extension of the federally-funded Title XIX program. Arizona has chosen to use the Premium Sharing Program to extend AHCCCS coverage to people who would not qualify for the Title XIX program. Except for income levels, the eligibility criteria for both programs are essentially the same, and persons who qualify for the Title XIX program are expressly excluded from coverage under the Premium Sharing Program. A.R.S. § 36-2923.01(B)(8). For most purposes the programs are not separate programs, but a single program.
¶ 25 As discussed above, the state must impose certain federal eligibility criteria on its Title XIX program. Plaintiffs' essential argument is that even if those criteria are valid because they are adopted by Congress, extension of the same criteria to the state-funded extension of the program is invalid. In other words, even though the Premium Sharing Program is intended to be an extension of the Title XIX program available to persons whose incomes exceed the Title XIX limits, eligibility for the program must also be expanded for reasons other than income-namely, alien status. Given the Constitution's strong policy disfavoring discrimination against aliens by states, this argument has some appeal. Nevertheless, we believe it would be an impractical and strained application of the Equal Protection Clause to bar a state from using federal eligibility criteria for a state program when a mandatory federal policy applies to one portion of a program and the state merely acts to implement uniform rules of alien eligibility for another part of the same program.[13] We believe it furthers an important governmental interest for the state to have uniform eligibility criteria for both parts of the program, so that the significant difference between the two programs is income level. When combined with the mandatory criteria imposed by federal law on the Title XIX program, we believe uniform eligibility criteria for different portions of a state program constitutes a compelling governmental interest.
¶ 26 A state may not, of course, always apply federal criteria to services or programs that are distinct from programs subject to the applicable federal law. Such a broad application of general federal policies was rejected in Plyler v. Doe, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), a case invalidating a state law that denied free public education to the children of illegal aliens. Plyler involved a state statute independent of any federal program, and the court's decision "rested substantially on the fact that the state had employed the federal classification `for its own discriminatory policy.'" Sudomir, 767 F.2d at 1466 (quoting Plyler, 457 U.S. at 226, 102 S.Ct. 2382) (emphasis added). In contrast, the statute in this case corresponds to an expressed congressional policy regarding immigration and operates consistently with the overall federal approach to immigration.
¶ 27 Congress has established a uniform federal policy for certain federally-funded benefits. Arizona has extended these benefits at its own expense to persons whose income levels are too high to meet federal financial eligibility criteria, but who still need assistance. The combination of the federal policy and the benefits of uniform eligibility criteria for different parts of the state's program create the rare circumstance when a state classification based on alien status satisfies strict scrutiny.

*289 CONCLUSION
¶ 28 For the reasons discussed, we find that Arizona's standards regarding alien eligibility for the Title XIX and Premium Sharing portions of AHCCCS do not violate equal protection. Accordingly, we affirm the judgment in the Avila matter in favor of AHCCCS. We reverse the judgment in Kurti, and remand to the superior court for entry of judgment for AHCCCS.
CONCURRING: WILLIAM F. GARBARINO, Judge and CECIL B. PATTERSON, JR., Judge (Ret.).
NOTES
[1] See A.R.S. §§ 36-2901 to -2998. AHCCCS provides health care to indigent individuals and families through the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396a. See A.R.S. § 36-2901(6).
[2] See A.R.S. §§ 36-2923 to -2923.03. The Premium Sharing Program is governed by the same citizenship criteria as AHCCCS, but allows some persons with greater financial resources than are allowed under Title XIX to receive benefits. See A.R.S. §§ 36-2901(6); 36-2901.01; 36-2901.03(A) and (B); and 36-2923.01(A) and (B). It is financed via the tobacco tax and health care fund. A.R.S. §§ 36-2901.02(C); 36-2923(A). The Premium Sharing Program was repealed by Ariz. Sess. Laws 2003, ch. 265, § 32, eff. september 18, 2003. Because Plaintiff's eligibility prior to that date is at issue in this case, and the questions raised may arise again, we do not consider the issue moot.
[3] "Qualified aliens" include "alien[s] who [are] lawfully admitted for permanent residence under the Immigration and Nationality Act [8 U.S.C. § 1101 et seq.]." See 8 U.S.C. § 1641(b)(1), referenced in A.R.S. § 36-2903.03(G)(1). The plaintiffs in this case are all lawful, permanent residents and, therefore, qualified aliens.
[4] This Act is also often referred to as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA").
[5] When the Kurtis first initiated this lawsuit, A.R.S. § 36-2903.03(B) did not contain the five-year rule, but rather limited full AHCCCS coverage to qualified aliens who had entered the United States prior to August 21, 1996. After the superior court dismissed the Kurtis' complaint for failure to state a claim, this Court held that the state statute was unconstitutional. Kurti v. Maricopa County, 201 Ariz. 165, 168, ¶ 9, 33 P.3d 499, 502 (App.2001)("Kurti I"). This court found that the lack of the five-year provision in the Arizona statute rendered it inconsistent with federal immigration laws (i.e., the Welfare Reform Act), and, therefore, it was subject to a strict scrutiny analysis and AHCCCS had failed to show the statute served any compelling governmental interest. Id. During the pendency of that (Continued ...) appeal, the Arizona Legislature amended A.R.S. § 36-2903.03(B) to include the five-year provision set forth in the federal law. Accordingly, upon remand, the Kurtis amended their complaint to allege that the new statute was similarly unconstitutional under the equal protection clause.
[6] Mr. Kurti has been diagnosed with advanced metastatic prostate cancer and, at the time of the lower court proceedings, was receiving hormonal treatment. He may need chemotherapy if that treatment stops working.
[7] Mr. Avila's ailments include end-stage renal disease, necessitating regular kidney dialysis.
[8] The Avilas did not specifically assert they were eligible for the Premium Sharing Program in their complaint, but did raise this assertion in their Motion for Preliminary Injunction and Partial Summary Judgment.
[9] We refer to the Kurtis and the Avilas collectively as "Plaintiffs."
[10] The Arizona Constitution also contains an equal protection clause. Ariz. Const. art. 2, § 13. Its reach is co-extensive with that of the federal guarantee, Westin Tucson Hotel Co. v. State Dep't of Revenue, 188 Ariz. 360, 366, 936 P.2d 183, 189 (App.1997), so we do not separately address it.
[11] This report can be accessed at http://www.urban.org/ UploadedPDF/occ24.pdf.
[12] This may be contrasted to 8 U.S.C. § 1621(a), where Congress specifically prohibited illegal aliens from receiving state or local public benefits.
[13] Congress plainly wished to encourage states to provide benefits at their own expense, even to qualified aliens who would not qualify for federally-funded benefits. See 8 U.S.C. § 1622. Congress also stated its intention that to the extent a state adopts the federal classification, the state "shall be considered to have chosen the least restrictive means available for achieving the compelling government interest of assuring that aliens be self-reliant in accordance with national immigration policy." 8 U.S.C. § 1601. Plaintiffs argue that to the extent this provision is interpreted as an attempt to legislate a constitutional standard, it is unconstitutional under City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Because we find the Arizona statute meets a compelling governmental interest without considering the federal statute, we do not address this separate constitutional issue.