JANE DOE & another[1] *vs.* COMMISSIONER OF TRANSITIONAL ASSISTANCE.

Suffolk. March 5, 2002. - August 15, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Welfare Reform Act. Constitutional Law,* Equal protection of laws, Privileges and immunities, Right to travel, Judicial review. *Alien.*

This court, having used a rational basis standard of review separately to analyze St. 1997, c. 43, § 210 (*a*), adopting uniform Federal guidelines regarding the eligibility of aliens for benefits, and St. 1997, c. 43, § 210 (*b*) and (*c*), providing State funds for supplemental transitional aid to families with dependent children, concluded that St. 1997, c. 43, § 210, requiring for eligibility that qualified aliens had either to have been enrolled in the transitional aid to families with dependent children program at the time Congress enacted the Personal Responsibility Act of 1996, 8 U.S.C. §§ 1601 et seq. (2000), or, if newly applying, to have resided in the Commonwealth for six months, did not violate the equal protection provisions of the United States or the Massachusetts Constitution. [525-535]

CIVIL ACTION commenced in the Superior Court Department on July 6, 2000.

The case was heard by *Ralph D. Gants,* J., on motions for partial summary judgment, and entry of judgment was ordered by *Ernest B. Murphy,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Deborah Harris (James Breslauer* with him) for the plaintiffs.

*Dean Richlin,* Assistant Attorney General (*Edward J. DeAngelo,* Special Assistant Attorney General, with him) for the defendant.

---

[1] Yocasty Bruno, "on behalf of themselves, their children, and all other similarly situated persons." The plaintiffs did not seek class certification. Jane Doe was born in the Dominican Republic, has been a legal permanent resident of the United States since 1997, and came to Massachusetts in April, 2000. Bruno, who was also born in the Dominican Republic, is a legal permanent resident of the United States who came to the United States in 1998, and to Massachusetts in June, 2000.

*Toni G. Wolfman, Jennifer Corinis, & Rebecca Cazabon,* for Jane Doe, Inc., & others, amici curiae, submitted a brief.

CORDY, J. In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 8 U.S.C. §§ 1601 et seq. (2000) (welfare reform act), which, in relevant part, barred "qualified aliens"[2] from receiving any Federal public benefits, including assistance provided to the States through the Federal temporary assistance for needy families program (TANF), until they had resided in the United States for five years. 8 U.S.C. § 1613(a). The welfare reform act also authorized States to impose limitations on the eligibility of qualified aliens for State-funded welfare benefits. 8 U.S.C. § 1624.[3] One of the stated purposes of the welfare reform act was to further the national immigration policy that "aliens within the Nation's borders not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations, and . . . [that] the availability of public benefits not constitute an incentive for immigration to the United States." 8 U.S.C. § 1601(2).

In Massachusetts, Federal TANF funds are combined with State funds to pay for the transitional aid to families with dependent children (TAFDC) program. G. L. c. 118. As a consequence, the passage of the welfare reform act made qualified aliens living in Massachusetts ineligible to receive assistance provided under the TAFDC program unless they had

---

[2] A "qualified alien" is one who has some legal residency status in the United States. See 8 U.S.C. § 1641(b) (2000). An alien who is not "qualified" does not. But see 8 U.S.C. § 1641(c)(1)(A) (2000) (alien who "has been battered or subjected to extreme cruelty in the United States by a spouse or a parent, or by a member of the spouse or parent's family residing in the same household as the alien" is classified as "qualified" alien). In addition, 8 U.S.C. §§ 1601 et seq. (2000), impose additional restrictions on the eligibility of aliens who are not "qualified" for Federal and State benefits that are not at issue here.

[3] Specifically, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (welfare reform act) authorizes States "to prohibit or otherwise limit or restrict the eligibility of aliens or classes of aliens for programs of general cash public assistance furnished under the law of the State," so long as "any prohibitions, limitations, or restrictions imposed by a State . . . are not more restrictive then the prohibitions, limitations, or restrictions imposed under comparable Federal programs." 8 U.S.C. § 1624(a), (b).

lived in the United States for five years.[4] In response, the Massachusetts Legislature enacted St. 1997, c. 43, § 210 (§ 210), which changed Massachusetts welfare law in two ways: first, it amended State law to conform to the requirements of the welfare reform act by confirming that qualified aliens ineligible to receive federally funded benefits would not be eligible to receive TAFDC benefits (§ 210 [a]); and second, it established a new program, supplemental transitional aid to families with dependent children (supplemental program), to be funded solely with State funds (§ 210 [b] and [c]). The supplemental program was available only to qualified aliens who were no longer eligible to receive TAFDC benefits because of the passage of the welfare reform act, and was intended to mitigate the impact of the loss of those benefits. St. 1997, c. 43, § 210 (b). The benefits provided to qualified aliens under the supplemental program were comparable to those provided under the TAFDC program. St. 1997, c. 43, § 210 (b). To be eligible, qualified aliens had either to have been enrolled in the TAFDC program at the time the welfare reform act was enacted, or, if newly applying, to have resided in the Commonwealth for six months.[5] St. 1997, c. 43, § 210 (c) (3).

---

[4]The plaintiffs conceded in the proceedings below that, if the State had done nothing to amend the transitional aid to families with dependent children (TAFDC) program after passage of the welfare reform act, qualified aliens who became ineligible to receive benefits as a result of that act would not have had access to TAFDC benefits. However, in their motion for reconsideration and on appeal, the plaintiffs argue that even after the passage of the welfare reform act, qualified aliens remained eligible to receive assistance under the TAFDC program, provided that the State used only State dollars to fund the assistance given to them. We disagree. The "[a]ssistance" provided under the TAFDC program was defined in the statute as "benefits funded jointly by the commonwealth and the federal government." St. 1995, c. 5, § 110 (a). To participate in the TAFDC program, a "[r]ecipient" had to be eligible to receive that "assistance." Id. The welfare reform act made qualified aliens residing in this country for less than five years ineligible to receive assistance from federally funded State programs and therefore ineligible to receive the "benefit" provided by TAFDC. 8 U.S.C. § 1613(a). Consequently, they were no longer eligible recipients under the TAFDC program as it was then in effect.

[5]The six-month Massachusetts residency requirement for St. 1997, c. 43, § 210 (c) (3) (supplemental program), while different from the five-year United States residency requirement imposed on the federally funded TAFDC program, was not more restrictive than comparable Federal programs, which would violate 8 U.S.C. § 1624(b). If a qualified alien had resided in the

The plaintiffs are qualified aliens who had not resided in the United States for more than five years, nor in the Commonwealth for six months, when they applied for and were denied benefits under the supplemental program. They filed an action in the Superior Court challenging the constitutionality of the six-month residency requirement of § 210 as violative of their right to the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and by arts. 1 and 10 of the Massachusetts Declaration of Rights.[6] The gravamen of these claims was that by imposing "a six-month residency requirement on some legal immigrants which is not imposed on other legal immigrants or citizens, Massachusetts discriminates against legal immigrants and thereby violates plaintiffs' rights to equal protection."

The Superior Court judge denied the plaintiffs' motion for a preliminary injunction. The parties filed partial cross motions for summary judgment on the equal protection claim. In ruling in favor of the defendant Commissioner of Transitional Assistance (commissioner), the judge first rejected the need to subject § 210 to strict scrutiny review:

> "When a state legislature, like the Massachusetts General Court, acts as it did here to help needy immigrants by creating and funding a Supplemental program intended solely to provide welfare benefits to immigrants who were cut off from [welfare] funds by Congress in the 1996 Act, 'heightened judicial solicitude' is not needed."

He then applied a rational basis standard of review based on his conclusion that:

> "When a state law benignly benefits only aliens and does not in any way put citizens in a superior position to similarly situated aliens, then this Court believes that it

United States for five years, but in the Commonwealth for less than six months, he or she would be eligible for benefits under the TAFDC program rather than comparable benefits under the supplemental program.

[6]The plaintiffs also set forth claims that the residency requirement violated the privileges and immunities clause of the United States Constitution, 42 U.S.C. § 1983 (1994 & Supp. V 1999), and 8 U.S.C. § 1624. These claims were voluntarily dismissed without prejudice below and are not before us.

should be examined through the rational basis test rather
than strict scrutiny."

Applying the rational basis standard, the judge found that the
six-month residency requirement did not violate the State or
Federal Constitutions. He therefore allowed the commissioner's
motion for partial summary judgment.

The parties entered into a stipulation dismissing the other
counts of the plaintiffs' complaint without prejudice, see note 6,
*supra*, and judgment entered for the commissioner. The plaintiffs
appealed, and we granted their application for direct appellate
review. On appeal, the plaintiffs claim that § 210 must be
subjected to strict scrutiny review, and that when reviewed
under that standard it cannot withstand an equal protection
challenge. We affirm the judgment entered in the Superior Court,
concluding that the proper standard of review is rational basis, a
standard that both parts of § 210 readily meet.

*Discussion.* In pertinent part, the Fourteenth Amendment
provides that no State shall "deny to any person within its
jurisdiction the equal protection of the laws." The word
"person" in this context includes "lawfully admitted resident
aliens as well as citizens of the United States and entitles both
citizens and aliens to the equal protection of the laws of the
State in which they reside." *Graham* v. *Richardson*, 403 U.S.
365, 371 (1971) *(Graham)*. In matters concerning aliens, the
Massachusetts Declaration of Rights has been interpreted to
provide a right to the equal protection of the laws, coextensive
with the Federal right. See *Frost* v. *Commissioner of Corps. &
Taxation*, 363 Mass. 235, 238 & n.3 (1973). As the Superior
Court judge correctly concluded, whether § 210 can withstand
a challenge on equal protection grounds depends on the standard
of review used to evaluate the distinctions it creates between
aliens, subclasses of aliens, and citizens.[7] We examine both
§ 210 *(a)* and § 210 *(b)* and *(c)* to determine the appropriate
standard to apply to each.

It is the general rule that State laws that discriminate against

[7]Where the equal protection provisions are coextensive, the standard of
review is the same under the State and Federal Constitutions. See *Murphy* v.
*Department of Correction*, 429 Mass. 736, 739 n.3 (1999), citing *Dickerson* v.
*Attorney Gen.*, 396 Mass. 740, 743 (1986).

legal immigrants in the distribution of economic benefits are subject to strict scrutiny. See *Graham, supra* at 375-376. This general rule does not apply, however, to State laws that merely adopt uniform Federal guidelines regarding the eligibility of aliens for benefits. See, e.g., *Sudomir* v. *McMahon,* 767 F.2d 1456, 1466 (9th Cir. 1985); *Cid* v. *South Dakota Dep't of Social Servs.,* 598 N.W.2d 887, 892 (S.D. 1999). Judicial review of such laws has been limited to whether there is a rational relationship between the disparity of treatment between citizens and aliens and some legitimate governmental purpose (rational basis standard). See *Sudomir* v. *McMahon, supra* at 1466; *Cid* v. *South Dakota Dep't of Social Servs., supra* at 892.

Courts apply the rational basis standard in these circumstances because of the scope and nature of congressional authority to regulate immigration. Congress acts with plenary authority under the United States Constitution when it legislates the rights and benefits to be afforded aliens present in this country. U.S. Const., art. I, § 8, cl. 4. See *Mathews* v. *Diaz,* 426 U.S. 67, 81-85 (1976); *Graham, supra* at 376-380; *Takahashi* v. *Fish & Game Comm'n,* 334 U.S. 410, 419 (1948). When Congress exercises this authority, it may distinguish and discriminate between citizens and aliens in ways that a State may not do on its own, and it may establish uniform national guidelines and policies dictating how States are to regulate and legislate issues relating to aliens. See *Graham, supra* at 377. See also *Plyler* v. *Doe,* 457 U.S. 202, 219 n.19 (1982) ("if the Federal Government has by uniform rule prescribed what it believes to be appropriate standards for the treatment of an alien subclass, the States may, of course, follow the federal direction"). Cf. *Mathews* v. *Diaz, supra* at 85 ("a division by a State of the category of persons who are not citizens of that State into subcategories of United States citizens and aliens has no apparent justification, whereas, a comparable classification by the Federal Government is a routine and normally legitimate part of its business"). When Congress exercises this authority, its actions are subject to review under the rational basis standard. See *Mathews* v. *Diaz, supra* at 82-83.

In this context, it would make no sense to say that Congress has plenary power to legislate national immigration policies and

guidelines subject to a deferential (rational basis) standard of review, and then to hold that the equal protection clause of the Constitution restrains States from adhering to or adopting those national policies and guidelines because their actions are subject to a higher (strict scrutiny) standard of review. See *Sudomir* v. *McMahon, supra* at 1465-1466; *Cid* v. *South Dakota Dep't of Social Servs., supra* at 892 ("[the plaintiffs] make no claim that South Dakota has adopted any rule or legislation that is in conflict with national policies regarding alienage, or that places any burdens, other than those contemplated in the federal law, on those subject to its provisions"). Cf. *Plyler* v. *Doe, supra* at 225 ("the States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal"); *Kurti* v. *Maricopa County*, 201 Ariz. 165, 170 (Ct. App. 2001) ("[u]nlike the statues at issue in *Sudomir* and *Cid*, Arizona's statutes regarding alien eligibility for health care benefits are not consistent with federal law").

*Section 210 (*a*).* Section 210 (*a*) incorporates the eligibility restrictions of the Federal welfare reform act into the federally subsidized TAFDC program. It does nothing more than adopt the uniform Federal policy barring qualified aliens from receiving benefits from federally funded State programs until they have resided in the United States for five years. Section 210 (*a*) is therefore subject only to a rational basis review. See *Sudomir* v. *McMahon, supra*; *Cid* v. *South Dakota Dep't of Social Servs., supra*; *Kurti* v. *Maricopa County, supra.*

For good reason, the plaintiffs do not contend that § 210 (*a*) fails to pass a rational basis review. The specific five-year eligibility restriction contained in the welfare reform act (and incorporated by § 210 [*a*]) has been uniformly upheld by Federal courts applying the rational basis standard. See, e.g., *Lewis* v. *Thompson*, 252 F.3d 567, 583-584 (2d Cir. 2001) (Medicaid coverage for pregnant women); *Aleman* v. *Glickman*, 217 F.3d 1191, 1198-1199 (9th Cir. 2000) (food stamps); *Chicago* v. *Shalala*, 189 F.3d 598, 605 (7th Cir. 1999), cert. denied, 529 U.S. 1036 (2000) (welfare benefits); *Rodriguez* v. *United States*, 169 F.3d 1342, 1347-1348 (11th Cir. 1999) (supplemental security income and food stamps). See also *Kiev* v. *Glickman*,

991 F. Supp. 1090, 1100 (D. Minn. 1998) (rational basis analysis used to find welfare reform act did not violate equal protection); *Abreu* v. *Callahan*, 971 F. Supp. 799 (S.D.N.Y. 1997) (same). Consequently, even though § 210 (*a*) (and the TAFDC program it alters) discriminates between citizens, who are immediately eligible for benefits, and qualified aliens, who must live in the United States for five years before becoming eligible, it does not violate the equal protection provisions of the United States or Massachusetts Constitutions.

*Section 210 (b)-(c).* Section 210 (*b*) and (*c*) does not enact or incorporate into State Law a uniform Federal policy or guideline regarding the availability of welfare benefits to aliens.[8] It creates a State-funded supplemental program to provide assistance to qualified aliens no longer eligible for TAFDC benefits after passage of the welfare reform act. We must therefore engage in a different analysis to determine the appropriate standard of review to apply to § 210 (*b*) and (*c*).

It is undisputed that the Massachusetts Legislature was not required to establish the supplemental program. It is also undisputed that the supplemental program provides no benefits for citizens, and that the only persons eligible for its benefits are qualified aliens. It is therefore apparent that the supplemental program itself does not discriminate against aliens and in favor of citizens. What it does do is discriminate between groups of qualified aliens on the basis of the length of their residency in Massachusetts. Qualified aliens who have lived in Massachusetts for six months are eligible for benefits, but those more newly arrived must wait for benefits until they reach the six-month threshold.[9]

Ordinarily, challenges to durational residency requirements

---

[8]The United States Constitution empowers Congress to "establish [a] *uniform* rule of naturalization" (emphasis added). U.S. Const. art. I, § 8, cl. 4. See *Graham* v. *Richardson*, 403 U.S. 365, 382 (1971) (*Graham*) ("[a] congressional enactment construed so as to permit state legislatures to adopt divergent laws on the subject of citizenship requirements for federally supported welfare programs would appear to contravene this explicit constitutional requirement of uniformity"). See also *Plyler* v. *Doe*, 457 U.S. 202, 219 n.19 (1982).

[9]Statute 1997, c. 43, § 210 (*c*), states: "A person who was not receiving benefits pursuant to said chapter 118 on June 30, 1997 and applies for benefits pursuant to subsection (*b*) on or after July 1, 1997 shall be eligible to receive

are premised on the fundamental right to travel freely as guaranteed by the privileges and immunities clause of the United States Constitution. U.S. Const. art. IV, § 2. See *Saenz* v. *Roe*, 526 U.S. 489, 509-510 (1999) (State law limiting maximum welfare benefits available to newly arrived California residents violative of citizens' constitutional right to travel); *Shapiro* v. *Thompson*, 394 U.S. 618, 638 (1969) (waiting period for welfare benefits failed strict scrutiny analysis because it "touche[d] on the fundamental right of interstate movement" and violated equal protection). Such a challenge is not before us, having been voluntarily dismissed below.

Durational residency requirements imposed on aliens are also subject to challenge under the supremacy clause of the United States Constitution because Congress has plenary authority over immigration matters. See, e.g., *DeCanas* v. *Bica*, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is unquestionably exclusively a federal power"). See also *Graham, supra* at 378 ("State laws that restrict the eligibility of aliens for welfare benefits merely because of their alienage conflict with these overriding national policies in an area constitutionally entrusted to the Federal Government"). Presumably because 8 U.S.C. § 1624 expressly permits States to place such restrictions on aliens' receipt of public assistance, the plaintiffs have not challenged the residency requirement present here on the ground that it violates the supremacy clause.

In the absence of such challenges, we are left to determine what standard of review to apply to a State law that does not discriminate between citizens and aliens, but includes a residency requirement for the only class of individuals eligible to participate in the program it establishes, qualified aliens. The situation appears to be unique, and there is little precedent to guide us.

We turn first to Federal jurisprudence applying equal protection principles to State actions discriminating between subclasses of aliens. The leading case is *Nyquist* v. *Mauclet*, 432 U.S. 1 (1977), in which the Supreme Court considered the constitutionality of a New York statute that provided educational

---

such benefits only if he: . . . (3) has resided in the commonwealth for at least six months prior to his application for such benefits."

assistance for (1) United States citizens; and (2) aliens who had applied for or intended to apply for United States citizenship. *Id.* at 3-4. In defending the statute, New York claimed that it did not distinguish between citizens and aliens, but only between aliens who agreed to apply for citizenship and those who would not. *Id.* at 8. Relying heavily on *Graham, supra,* the Court rejected the State's argument and subjected the statute to a strict scrutiny analysis because it was "directed at aliens" and "only aliens [were] harmed by it." *Nyquist* v. *Mauclet, supra* at 9. Because of critical differences between the statutes in issue, however, we do not find the *Nyquist* Court's reasoning to be determinative of our analysis of § 210 (*b*) and (*c*). First, all residents of New York (citizens and resident aliens alike) were eligible to apply for assistance under the New York statute, *id.* at 2-3, but the statute imposed an additional requirement on aliens solely because of their status as such. Second, the Court found that the New York statute harmed aliens by barring them from participating in the assistance program if they did not satisfy its terms. *Id.* at 4. In contrast, the Massachusetts statute establishes a program open only to aliens, imposes a residency requirement on all who are qualified to apply for its benefits, and does not harm aliens by barring them from the benefits of the program, requiring only that they wait six months to become eligible to receive the benefits. Finally, there is a troubling aspect of the statute that the *Nyquist* Court alludes to in dicta: New York's overt attempt to "coerce" aliens into becoming United States citizens, *id.* at 8 & n.10, *id.* at 14 (Burger, C.J., dissenting), *id.* at 15 (Powell, J., dissenting), *id.* at 21 n.4 (Rehnquist, J., dissenting), an apparent intrusion directly on Federal authority to regulate immigration. *Graham, supra* at 376-378. In sum, because the New York statute and its requirements are not similar in kind or effect to the six-month residency requirement of § 210 (*b*) and (*c*), the *Nyquist* analysis does not govern the unique circumstances of this case.

We next look to the jurisprudence of other State courts that have decided equal protection challenges to State legislation enacted in the wake of the welfare reform act. Unfortunately,

the circumstances of the few cases decided vary significantly from those presently here.[10]

For example, the plaintiffs point to a decision by the Court of Appeals in New York, *Aliessa* v. *Novello*, 96 N.Y.2d 418 (2001), in which the court applied a strict scrutiny standard in striking down a five-year residency requirement imposed on qualified aliens, but not citizens, seeking benefits under a State-only funded Medicaid program. "New York had long provided State Medicaid to needy recipients without distinguishing between legal aliens and citizens. It ceased to do so, however, after Congress enacted [the welfare reform act]." *Id.* at 424. In response to the passage of the welfare reform act, New York enacted a statute that terminated State-funded Medicaid coverage for nonqualified aliens and imposed the five-year waiting period on qualified aliens. *Id.* at 427. Unlike the supplemental program created by § 210 (*b*) and (*c*), the amended New York State Medicaid program presented the Court of Appeals with the very paradigm so definitively addressed in *Graham, supra* — a State-funded benefit program available to citizens but not available to aliens on the same terms.[11] For this reason, among others, its authority is not persuasive.

---

[10]See, e.g., *Tenison* v. *State*, 38 P.3d 535 (Alaska 2001) (requiring Social Security number as part of application for driver's license); *Kurti* v. *Maricopa County*, 201 Ariz. 165 (Ct. App. 2001) (changes in State health benefits pursuant to welfare reform act); *Doe* v. *Wilson*, 57 Cal. App. 4th 296 (1997) (emergency regulation terminating State-funded prenatal care); *Dowling* v. *Slotnik*, 244 Conn. 781 (1998) (no preemption of workers' compensation laws by welfare reform act); *Tonashka* v. *Weinberg*, 178 Misc. 2d 280 (N.Y. Sup. Ct. 1998) (plaintiff permanently residing in the United States under color of law for purposes of public assistance); *Aliessa* v. *Novello*, 96 N.Y.2d 418 (2001) (termination and limitation of Medicaid benefits); *Cid* v. *South Dakota Dep't of Social Servs.*, 598 N.W.2d 887 (S.D. 1999) (termination of welfare benefits).

[11]In *Graham, supra*, the Court rejected attempts to condition welfare benefits on an applicant's possession of United States citizenship or, if the beneficiary was an alien, on having resided in this country for a specified number of years. The State statutes at issue created two classes of people that were "indistinguishable except with respect to whether they are or are not citizens of this country." *Id.* at 371. Both Arizona and Pennsylvania sought "to justify their restrictions on the eligibility of aliens for public assistance solely on the basis of a State's 'special public interest' in favoring its own citizens over aliens in the distribution of limited resources such as welfare benefits." *Id.* at 372. The Court concluded that "a State's desire to preserve limited welfare benefits for its own citizens is inadequate to justify

The parties, of course, espouse diametrically opposed views about the level of scrutiny we should use to analyze the supplemental program. On one end of the spectrum, the commissioner argues that, because Congress could prohibit States from providing any benefits to aliens through the exercise of its plenary power over the regulation of aliens and its power under the supremacy clause, Congress had the power to authorize States to provide State-funded benefits to some, but not all, aliens. She contends that the six-month residency requirement should be subject to rational basis scrutiny because the welfare reform act explicitly authorized States to impose restrictions on the eligibility of qualified aliens for State-funded benefits, which the Massachusetts Legislature did by imposing the six-month residency restriction on a subclass of aliens. Further, because Massachusetts acted consistently with Federal legislation, and because Federal legislation relating to aliens is subject to rational basis review, the commissioner concludes that the State's enactment of the supplemental program is also subject to that same level of review.[12]

On the other end of the spectrum, the plaintiffs contend that

Pennsylvania's making noncitizens ineligible for public assistance, and Arizona's restricting benefits to citizens and longtime resident aliens." *Id.* at 374. After finding that the classifications were "inherently suspect and . . . therefore subject to strict scrutiny," the Court ultimately held that State statutes that create welfare benefits for citizens but deny them "to resident aliens [or] . . . to aliens who have not resided in the United States for a specified number of years violate the Equal Protection Clause." *Id.* at 376.

[12]The Superior Court judge rejected these arguments:

> "[R]ational basis analysis in this case cannot be justified on the grounds of federal regulation of immigration and naturalization, because Congress did not care whether or not Massachusetts provided these welfare benefits to qualified aliens, with or without limitations. Congress simply insisted that, whatever a state chose to do with state monies with respect to qualified aliens, it may not act more harshly towards these aliens than Congress."

Cf. *Washington* v. *Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 501-502 (1979) (applying rational basis analysis to State law regarding Indian affairs because "[i]t is well established that Congress, in the exercise of its plenary power over Indian affairs, may restrict the retained sovereign powers of the Indian tribes. . . . In enacting [its State law], Washington was legislating under explicit authority granted by Congress in the exercise of that federal power" [citation omitted]).

the reasoning of *Graham, supra*, governs this case because § 210 (*b*) and (*c*) involves an inherently suspect alienage classification. They rely on the general rule that aliens, as a class, are a prime example of a "discrete and insular" minority for whom heightened judicial review is appropriate. They conclude that "a durational residency requirement that denies benefits to legal immigrants, such as Massachusetts' six-month rule, is not valid." Integral to their argument is the fact that citizens are eligible to receive comparable benefits from the TAFDC program without having a comparable six-month residency requirement.[13]

We are inclined to reject the commissioner's position for the same reasons it was rejected by the Superior Court judge. We also reject the plaintiffs' position that the strict scrutiny analysis the Court applied to a classification based on alienage in *Graham, supra*, should be applied to the unique circumstances of this case when the only group to whom benefits are available is aliens. The fact that citizens are eligible to receive benefits from a different program (TAFDC) on conditions less restrictive than those imposed on qualified aliens is a direct result of the enactment of uniform Federal policies, subject, as noted above, to a separate rational basis review, and does not affect our analysis of the proper standard of review to be used in evaluating the program established by § 210 (*b*) and (*c*).

We conclude that the appropriate standard of review in these circumstances depends on the nature of the classification that creates the distinction between subgroups of aliens. If that classification were a suspect one such as race, gender, or national origin, we would apply a strict scrutiny analysis. See, e.g.,

---

[13]The Superior Court judge also rejected these arguments:

"The six-month residency requirement cannot be said to discriminate between citizens and qualified aliens. While aliens who fail to meet that eligibility requirement are denied benefits under the Supplemental program, citizens who fail to meet it are also denied benefits under this program. Indeed, citizens are barred entirely from all benefits from this program. Therefore, in contrast with the welfare programs in *Graham*, this is not a case where citizens are eligible for benefits under a particular welfare program and similarly situated qualified aliens are not."

*Plyler* v. *Doe,* 457 U.S. 202, 216-217 & n.14 (1982). Where, as here, that classification is Massachusetts residency, the proper standard of review is rational basis. We reach this conclusion because we find that the operative classification for equal protection purposes in the setting of this case is not alienage, but residency.

In concluding that a rational basis standard of review applies, we have also considered the context in which the supplemental program was enacted; its purpose and the clearly noninvidious intent behind its promulgation; the effect of its implementation on mitigating the harm to qualified alien families that might otherwise be without substantial assistance for five years under the requirements of the welfare reform act; and the potential harm to those same families if the Legislature could only choose to create an all-or-nothing program as a remedy to their disqualification from federally funded programs.

Reviewed under the rational basis standard, § 210 (*b*) and (*c*) passes muster, and the plaintiffs do not contend otherwise. In enacting § 210 (*b*) and (*c*), the Massachusetts Legislature adopted a statute that is consistent with national policies regarding alienage, and that places no additional burdens on aliens beyond those contemplated by the welfare reform act. Section 210 (*b*) and (*c*) furthers the Federal policy of self-sufficiency and self-reliance with respect to welfare and immigration by ensuring that aliens first attempt to be self-sufficient before applying for State-funded welfare benefits. In addition, the six-month residency requirement encourages aliens to develop enduring ties to Massachusetts. The fact that the Legislature might have been able to satisfy the requirements of the welfare reform act in a different way does not mean that the legislative decision to enact § 210 was irrational or constitutionally impermissible.[14]

*Conclusion.* Having separately analyzed § 210 (*a*) and § 210 (*b*) and (*c*) using a rational basis standard of review, we

---

[14]Using this same analysis, § 210 also survives scrutiny under the cognate provisions of the Massachusetts Constitution. See *Murphy* v. *Department of Correction,* 429 Mass. 736, 739 n.3 (1999).

conclude that § 210[15] does not violate the equal protection provisions of the United States or the Massachusetts Constitution.

*Judgment affirmed.*

---

[15]Statute 1997, c. 43, § 210, contains two additional paragraphs that have not been challenged here.