241 P.3d 489 (2010)
2010 WY 137
In the Interest of DRT, A Minor.
Jet, Appellant (Respondent),
v.
The State of Wyoming, Department of Family Services, Appellee (Petitioner).
No. S-10-0057.
Supreme Court of Wyoming.
October 21, 2010.
*490 Representing Appellant: John M. Burman, Faculty Supervisor, and Joshua S. Toy, Student Intern, U.W. Legal Services Program, Laramie, Wyoming. Argument by Mr. Toy.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Sue Chatfield, Senior Assistant Attorney General. Argument by Ms. Chatfield.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
VOIGT, Justice.
[¶ 1] This is an appeal from the juvenile court's denial of the appellant's motion to withdraw her admission of neglect of her child, and from the disposition order placing the child in the custody of the Department of Family Services. Finding no error, we affirm.

ISSUES
[¶ 2] The appellant presents a somewhat convoluted statement of the issues that is not consonant with her Notice of Appeal. The first stated issue in her appellate brief is whether the juvenile court erred in accepting her admission of neglect, yet she did not appeal from the order accepting that admission and adjudicating the issue of neglect. She then commingles that issue with the question of whether the juvenile court erred *491 in entering an order denying her motion to withdraw the admission of neglect, from which order she did appeal. Finally, her Notice of Appeal indicates that she is appealing from the disposition order entered in the case, yet she raises no factual or legal issues concerning any part of that order.
[¶ 3] We believe that the issues actually presented to this Court can best be formulated as follows: Did the juvenile court abuse its discretion in denying the appellant's motion to withdraw her admission of neglect because (1) the juvenile court failed to advise the appellant at the initial hearing that a termination of her parental rights may be initiated upon an adjudication of neglect; (2) the juvenile court accepted the admission of neglect notwithstanding the evidence that the appellant suffered from a mental illness; and (3) the juvenile court's acceptance of the appellant's admission of neglect sets a dangerous precedent that will deter persons in her position from seeking assistance from governmental agencies?

FACTS
[¶ 4] The appellant is a twenty-year-old single mother of one child. Prior to the child's birth, the appellant moved from a homeless shelter in Texas to Rawlins, Wyoming, where she moved in with her former fiancé's parents and two other adults. When that living arrangement was not successful, the appellant moved into a low-income housing apartment. During her pregnancy, the appellant worked with both a public health nurse and social worker, and with a counseling center therapist.
[¶ 5] The child was born on November 20, 2009. At about 2:00 a.m., on November 26, 2009, the appellant telephoned the public health social worker and told her something to the effect that she needed some help with the child because she knew she had a temper, or that she was afraid she was going to hurt the child. The social worker called the police department, and a police officer in turn called a Department of Family Services caseworker. Both the police officer and the caseworker went to the appellant's home, where the officer took the child into protective custody. In an affidavit attached to the neglect petition filed a few days later, the caseworker stated that when she arrived at the appellant's house, the appellant was visibly upset and crying, and said that "she is afraid that she might hurt [the child] because at night when [the child] starts crying she finds herself screaming at [the child]."
[¶ 6] The juvenile court held a combined shelter care hearing and initial appearance on December 1, 2009.[1] Because this appeal revolves around what occurred at that hearing, we will quote at length from the transcript:
THE COURT: Okay. [The appellant], are you under the influence of alcohol, narcotics or medication?
THE MINOR'S MOTHER: No, sir.
THE COURT: Are you suffering from any mental problems that make it difficult for you to understand these proceedings?
THE MINOR'S MOTHER: Yes, sir, bipolar and ADHD as well as panic attacks and anxiety attacks.
THE COURT: And when were you diagnosed with bipolar?
THE MINOR'S MOTHER: When I was a child. I'm not sure of the age, but I know that I have been medicated from elementary school up.
THE COURT: On psychotropic medication?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Do you happen to know what medication?
THE MINOR'S MOTHER: Too many to name. I have been on almost every single one they could put me on.
THE COURT: Are you medicated right now?
THE MINOR'S MOTHER: No, sir.
THE COURT: Are you clearheaded? Do you understand why you're here?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Have you been served with a copy of this petition?
THE MINOR'S MOTHER: Yes, sir.

*492 ....
THE COURT: You understand that the State is alleging that you have neglected [the child] by failing to provide adequate care. Have you read the affidavit of [the caseworker] that was attached to the petition?
THE MINOR'S MOTHER: Yes, sir. And I note some things that weren't entirely as it was supposed to be.
THE COURT: Okay. Let'swe will talk about that in a minute if we need to, but for now I want to make sure that you understand what's brought you here.
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Okay. I want to talk to you about your rights in this proceeding. This is juvenile court. We are not here to punish anyone. We are not here to accuse anyone of misconduct. We are here to protect [the child] and to make sure that [the child] is in a healthy and safe environment.
You, on the other hand, have certain rights guaranteed to you by laws in this state, and they include the fact that you have the right to remain silent; anything you say may be used against you. You have the right to be represented by a lawyer; and if you cannot afford one, the Court will appoint one to represent you.
Upon your denial of these allegations, you have the right to force the State of Wyoming to prove them by a preponderance of the evidence at an adjudicatory hearing. That's just a long word for a trial. You have the right to be present at your trial either before a judge of this court or before a jury of six persons. If you want a jury of six persons, you have to make that demand in writing within 10 days from today. You have a right to be present at that hearing with your attorney to hear and cross-examine the State's witnesses, to produce witnesses in your own behalf using the subpoena powers of this Court. And if an adjudication of neglect is entered, you have the right to appeal any mistakes that may have been made to the Wyoming Supreme Court in Cheyenne.
Do you understand all of that?
THE MINOR'S MOTHER: Okay.
....
THE COURT: Unless you agree that the child ought to remain in foster care, then the State has to prove here today by clear and convincing evidence that the child shouldn't be returned to you. Or you can postpone that hearing and leave the child in shelter care, we call it, until you have had a chance to talk to your lawyer.
This Court from today forward may place your child someplace where we all believe the child will be safe, including the custody of DFS for placement in foster care. The Court may impose terms and conditions necessary to assure your appearance and protect [the child] from any harm. That includes foster care or some facility outside the home. You will be subject to orders, demands, requirements, limitations, restrictions or conditions necessary; first, to assure your appearance and, secondly, to assure the fact that [the child] has been protected from harm.
If [the child] is placed outside your home for 15 of the next 22 continuous months, the State may file a petition to terminate your parental rights. I don't tell you that to scare you, but you have a right to know what could happen down the road.
You could be ordered to pay child support or to pay for all or any part of the services that the State of Wyoming may provide to your child.
Do you understand all of that?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Okay. Do you think [the child] is, as we sit here, in a healthy and safe place?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Do you think [the child] ought to stay there until we get to the bottom of what's going on?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: Okay. Do you want to talk to a lawyer?
THE MINOR'S MOTHER: No, sir.
THE COURT: Are you sure of that?
THE MINOR'S MOTHER: (Nodded.)
THE COURT: You know you have an absolute right to talk to a lawyer at no *493 expense to you. And in a moment, if you don't want to talk to a lawyer, then I'm going to ask you if you admit or deny these allegations. And if you admit the majority of them, if you admit the gist of what the State is claiming, then I'm going to take jurisdiction over you and your child and we are going to see what kind of treatment we can provide to you so that you can take care of [the child].
The goal of this court now and for the foreseeable future in this case is to reunify you with your child. We want to put [the child] back into your home, but we have got to make sure that your home is a healthy and safe place before we can do that. And I can tell you right now we are going to have to start off with some psychiatric evaluations. We are going to have to figure outif you are, in fact, bipolar alreadywhat kind of meds you ought to be on.
THE MINOR'S MOTHER: I understand, sir.
THE COURT: Okay. So you understand all of that?
THE MINOR'S MOTHER: Yes, sir.
THE COURT: I will ask you again if you want to talk to a lawyer?
THE MINOR'S MOTHER: No, sir.
THE COURT: Okay. Has anybody threatened you or forced you to make that decision?
THE MINOR'S MOTHER: No, sir.
THE COURT: Has anybody made you any promises or agreements as to what might happen if you waive your right to a lawyer?
THE MINOR'S MOTHER: No, sir.
THE COURT: Okay. Do you admit or deny these allegations?
THE MINOR'S MOTHER: The allegations are true, sir.
[¶ 7] Following this colloquy, the judge and the appellant engaged in a lengthy discussion of the appellant's current living arrangements, her previous living arrangements, how she came to be in Rawlins, Wyoming, and about her pregnancy and the person she believed to be the father of the child. At the end of that discussion, this additional colloquy occurred:
THE COURT: All right. [The appellant], do you have any questions?
THE MINOR'S MOTHER: No sir, but I would like to ask some questions as to let's seeon here it was stating that I was schizophrenic, which is untrue.
THE COURT: Just bipolar?
THE MINOR'S MOTHER: I have never been diagnosed with schizophrenia or as schizophrenic.
THE COURT: But you have been diagnosed as bipolar.
THE MINOR'S MOTHER: Bipolar and ADHD, panic attacks and anxiety attacks.
THE COURT: All right. Then I will strike the reference to schizophrenia, and we will have a psychiatric evaluation.
THE MINOR'S MOTHER: All right.

STANDARD OF REVIEW
[¶ 8] Neither party identifies with much particularity the standard this Court should apply in reviewing the denial of a motion to withdraw an admission of neglect in a juvenile proceeding. The appellant presents her argument mainly in terms of due process because of the constitutionally protected right to the parent-child relationship. The State compares this situation to the denial of a motion to withdraw a plea in a criminal case, but it also recognizes the constitutional implications. We find that a motion to withdraw an admission in juvenile court is similar to a motion to withdraw a plea in a criminal case, and we hereby apply the standard of review set forth in Demeulenaere v. State, 2008 WY 147, ¶ 13, 197 P.3d 1238, 1240-41 (Wyo.2008), which we summarize and re-state as follows: (1) a parent does not have an absolute right to withdraw an admission of neglect in a juvenile proceeding; (2) the juvenile court is vested with discretion to determine whether to grant or to deny a motion to withdraw an admission; (3) the denial of such a motion is within the sound discretion of the juvenile court where the admission was voluntary and where the procedural requirements of the applicable statutes *494 were met at the time the admission was accepted.

DISCUSSION

Did the juvenile court abuse its discretion by denying the appellant's motion to withdraw her admission of neglect because the juvenile court did not, before accepting that admission, advise the appellant that a termination of parental rights may be initiated upon an adjudication of neglect?
[¶ 9] In the instant case, the child was taken into temporary protective custody without a court order. Wyo. Stat. Ann. § 14-3-409(a) (LexisNexis 2009) requires that, in such case, a petition in statutory form be filed and that an informal shelter care hearing be set as soon as possible. Subsection (b) of the same statute directs the court to give certain advisements at that hearing:
(b) At the commencement of the hearing the judge shall advise the child and his parents, guardian or custodian of:
(i) The contents of the petition and the nature of the allegations contained therein;
(ii) Their right to counsel as provided in W.S. 14-3-422;
(iii) The right to confront and cross-examine witnesses or to present witnesses and evidence in their own behalf and the right to issuance of process by the court to compel the appearance of witnesses and the production of evidence;
(iv) The right to a jury trial as provided in W.S. 14-3-423;
(v) The right to appeal as provided in W.S. 14-3-432; and
(vi) The state's obligation, pursuant to W.S. 14-3-431(d), to file a petition to terminate parental rights when a child has been placed in foster care under the responsibility of the state for fifteen (15) months of the most recent twenty-two (22) months unless the court finds that one (1) of the exceptions listed in W.S. 14-3-431(m) applies.
[¶ 10] In addition to these advisements, Wyo. Stat. Ann. § 14-3-426(a) (LexisNexis 2009) requires the juvenile court to give the following advisements at the initial hearing:
(a) At their initial hearing, which may be held after a shelter care hearing or a transfer hearing, the child and his parents, guardians or custodian shall be advised by the court of their rights under law and as provided in this act. They shall also be advised of the specific allegations in the petition and given an opportunity to admit or deny them. They shall also be advised of the possible liability for costs of treatment or services pursuant to this act....
[¶ 11] The appellant does not contend that the juvenile court failed to give any of these advisements at the hearing, and the portions of the hearing transcript quoted above reveal compliance with the statutes. See supra ¶ 6. The appellant argues, however, that the juvenile court violated her right to the due process of law by failing to advise her, in addition, of the existence of other statutory bases for the possible termination of her parental rights. Specifically, the appellant claims that the juvenile court should have advised her that a termination of her parental rights "could occur following an adjudication of neglect without any minimal time frame during which reunification efforts must first take place."
[¶ 12] The appellant's brief contains a lengthy argument identifying the parent-child relationship as a constitutionally protected interest with which the State may not interfere in the absence of procedural and substantive due process. Without citation to compelling authority, the appellant then concludes that the alleged notice failure mentioned above violated both. We concur with the first proposition, but not the second. The neglect petition in the instant case was brought pursuant to the Child Protection Act found at Wyo. Stat. Ann. § 14-3-401 et. seq. (LexisNexis 2009). At a hearing under the Child Protection Act, the State has the burden of proving an allegation of neglect by a preponderance of the evidence. Wyo. Stat. Ann. § 14-3-425. When a child has been adjudged to be neglected under the Act, the juvenile court is obligated to "ensure that reasonable efforts were made by the department of family services to prevent or eliminate *495 the need for removal of the child from the child's home or to make it possible for the child to return to the child's home." Wyo. Stat. Ann. § 14-3-429(a)(iv). The Child Protection Act then also provides that, if a child has been placed in foster care under the Act for 15 of the most recent 22 months, "the state shall file a petition to terminate parental rights...." Wyo. Stat. Ann. § 14-3-431(m).
[¶ 13] It is notice of this potential for termination of parental rights that is required by Wyo. Stat. Ann. § 14-3-409(b)(vi). The appellant argues that her right to due process was violated, however, even though this advisement was given, because she was not also advised that, under the Termination of Parental Rights Act, a finding of neglect could result in termination of her parental rights "without any minimal time frame during which reunification efforts must first take place." See Wyo. Stat. Ann. § 14-2-309(a)(iii) (LexisNexis 2009). We believe that the appellant's position in this regard has already been rejected by this Court in MN v. State Department of Family Services, 2003 WY 135, ¶¶ 36-37, 78 P.3d 232, 240 (Wyo.2003):
Mother asserts that the court violated her right to counsel at the initial juvenile proceeding hearing and, thus, the district court was divested of subject matter jurisdiction. Specifically, Mother espouses that the failure to appoint counsel during the initial hearing is of such a serious nature that it undermines the State's entire termination case. The State primarily argues that a neglect action is not a prerequisite to a termination of parental rights proceeding, and the two are separate and distinct. The State further argues that there has been no showing that Mother's rights were prejudiced, or even impacted, and therefore the court's action must be characterized as harmless.
Initially this court recognizes that termination proceedings are entirely separate and distinct from neglect proceedings, deriving their respective genesis from separate statutes and requiring different burdens of proof. In particular, a neglect action is not a mandatory prerequisite to termination of parental rights. Moreover, Mother has failed to show how the failure to appoint her counsel within the juvenile proceeding violated her due process rights regarding the termination proceedings. Indeed, Mother's admission of neglect in the juvenile proceeding did not relieve the State from proving by clear and convincing evidence that Mother's parental rights should be terminated. To the contrary, the State could not simply utilize Mother's admission of neglect in the juvenile proceeding but was required to show at trial that Mother neglected [her child].
[¶ 14] The lesson of MN is that the failure to appoint counsel in a juvenile neglect proceeding did not prejudice the parent in a subsequent termination proceeding based upon neglect, because the two are entirely separate, with neither being dependent upon the other. That logic leads to the conclusion that, in a juvenile neglect proceeding such as that now before the Court, the juvenile court is not obligated to advise the parent of the potential filing of a termination petition under a different legislative act. The portion of the hearing transcript quoted above shows that the juvenile court in this case carefully advised the appellant of her rights in these proceedings, and of the consequences that could result from an admission or a finding of neglect. See supra ¶ 6. That is as far as the juvenile court was required to go.[2] Consequently, the juvenile court did not abuse its discretion by denying the appellant's motion to withdraw her admission of neglect on the basis of the advisements given at the initial hearing.

Did the juvenile court abuse its discretion by denying the appellant's motion to withdraw her admission of neglect because the juvenile court accepted the admission of neglect notwithstanding the evidence that the appellant suffered from a mental illness?
[¶ 15] The appellant relies upon Hayes v. State, 599 P.2d 558, 563 (Wyo.1979) *496 for the proposition that the determination of whether an "accused" is mentally fit to proceed is a threshold issue that must be resolved to prevent a violation of due process. Although Hayes involved the mental capacity of a criminal defendant to stand trial, we will assume arguendo that its underlying principle applies to determination of the mental capacity of a parent to waive the right to counsel and to enter an admission of neglect in a juvenile proceeding.[3] Citing other cases from the criminal context, we note first that there is no absolute right to withdraw a plea, and we note second that we consider the record as a whole in determining whether there was a voluntary relinquishment of the right to counsel and a voluntary entry of a plea. Trujillo v. State, 2 P.3d 567, 571 (Wyo. 2000); Haddock v. State, 909 P.2d 974, 976 (Wyo.1996); Mehring v. State, 860 P.2d 1101, 1106 (Wyo.1993).
[¶ 16] The right to counsel in a criminal case has its genesis in the Sixth Amendment. Bolin v. State, 2006 WY 77, ¶¶ 29-30, 137 P.3d 136, 146 (Wyo.2006). The right to withdraw a plea in a criminal case is governed by W.R.Cr.P. 32(d). While the parties have cited cases interpreting these rights, they agree that we ultimately are guided by "due process" in these circumstances, which we have defined as follows:
"For all its consequence, `due process' has never been, and perhaps can never be, precisely defined. `[U]nlike some legal rules,' this Court has said, due process `is not a technical conception with a fixed content unrelated to time, place and circumstances.' Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743[, 1748, 6 L.Ed.2d 1230 (1961)]. Rather, the phrase expresses the requirement of `fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what `fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake."
Matter of GP, 679 P.2d 976, 993 (Wyo.1984) (quoting Lassiter v. Dep't of Social Servs., 452 U.S. 18, 24-25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981)).
[¶ 17] We begin our review of the juvenile court's denial of the appellant's motion to withdraw her admission of neglect by noting again the colloquy between the appellant and the court during the initial hearing quoted at length above. See supra ¶ 6. Two things are readily apparent: the juvenile court's meticulous recitation of the appellant's rights and the nature of the hearing, and the juvenile court's careful investigation of the appellant's mental capacity. Other than the appellant's self-identified prior diagnoses, there is nothing within the transcript of that hearing that suggests any inability on her part to understand fully what was being said. "[A] diagnosis of a recognized mental illness [does not] automatically render[] a person incompetent to enter a guilty plea." Koenig v. State, 2005 WY 135, ¶ 11, 121 P.3d 780, 782 (Wyo.2005) (bipolar disorder).
[¶ 18] It is also telling that, at the hearing upon the appellant's motion to withdraw her admission, the appellant, now represented by counsel, presented no evidence, and almost no argument suggesting mental incapacity. Her argument consisted largely of this single sentence: "It is also troubling that she mentioned she had a bipolar disorder and it was of enough concern that a psychiatric evaluation was also ordered." Perhaps even more telling is the fact that the evaluation had taken place prior to the hearing, with the report indicating that, although she did indeed suffer from bipolar disorder and a "mixed personality disorder," the appellant showed no evidence of disorganized thought processes, did not suffer from ADHD, and had a "high average intellectual functioning." In short, there is absolutely nothing in the record suggesting that the due process of law required that the appellant be allowed to withdraw her admission of neglect based upon her mental condition, because there is nothing in the record suggesting that her *497 mental condition had any effect upon the voluntariness of that admission.

Did the juvenile court abuse its discretion by denying the appellant's motion to withdraw her admission of neglect because acceptance of the admission sets a dangerous precedent that will deter persons in her position from seeking assistance from governmental agencies?
[¶ 19] We will not consider this final issue because it is not supported by cogent argument, because it is not supported by citation to relevant authority, because it is based upon policy considerations more properly brought before a legislative body, and because it is entirely speculative. Moreover, implementation of such a policy would render application of the Child Protection Act impossible where the neglect is made known to authorities by voluntary action of a parent. Once the appellant sought assistance, there was little choice but to take the child into protective custody. And once that occurred, Wyo. Stat. Ann. § 14-3-409 required that a petition be filed and that a shelter care hearing be set, and Wyo. Stat. Ann. § 14-3-426 required an initial hearing on the petition. Short of immediately returning the child to the appellant, an option the appellant did not even seek, the only appropriate procedure was to obtain an admission or denial from the appellant.

CONCLUSION
[¶ 20] The juvenile court did not abuse its discretion in denying the appellant's motion to withdraw her admission of neglect. The appellant's waiver of counsel was voluntary, the admission was voluntary, and the juvenile court followed all appropriate procedures at the hearing. Therefore, we affirm.
NOTES
[1] See Wyo. Stat. Ann. §§ 14-3-409 and 14-3-426 (LexisNexis 2009).
[2] This situation is similar to Valle v. State, 2006 WY 43, ¶ 9, 132 P.3d 181, 184 (Wyo.2006), where we held in a criminal case that, at arraignment, the court is required to advise the defendant only of the direct consequences of a plea, and not of speculative or collateral consequences, such as possible deportation.
[3] The right to counsel may be waived in a criminal case. See, e.g., Bolin v. State, 2006 WY 77, ¶¶ 30-31, 137 P.3d 136, 146 (Wyo.2006).